### MOSES WILLIAMS v. THE RICHMOND AND DANVILLE RAILROAD COMPANY.

*Excusable Neglect—Judgment, when Set Aside.*

Upon the facts found by the Court (which are set out in the report of the case), there was such excusable neglect as warranted the trial Court in setting aside the judgment.

CLARK, J., dissenting.

WILLIAMS *v.* RAILROAD.

This was a MOTION to set aside and vacate the judgment rendered at DUPLIN Superior Court, August Term, 1891, before *Boykin, J.*

The Court found the following facts:

The summons was served July 7th on the station agent at Goldsboro, and by him duly forwarded to the headquarters of the company at Atlanta, according to regulations; by the managing officer delivered to the General Southern Counsel, and by them, on July 18th, 1891, all the papers were sent to David Schenck, the counsel of the North Carolina Division; that by mistake the papers were sent to Mr. Cothran, the counsel for the South Carolina Division, along with papers in two other cases. On July 20th, fifteen days before Court met, Mr. Cothran sent the papers to Mr. Schenck, but by some mischance the papers were not received by Mr. Schenck until the night of August 4th; that these papers were sent by railway mail, a method of transmission of papers and letters through baggage masters universally adopted by this and other railroads, and usually safe and reliable; that Mr. Schenck was sick when the papers were received, but on the next day sent the papers to F. H. Busbee, who was an attorney, resident in Raleigh, N. C., having charge of the business of the Richmond and Danville Railroad in Eastern North Carolina, including Duplin County; that Mr. Busbee had left Raleigh, by the advice of a physician, the day the papers were sent, August 5th, and did not receive them; that if he had been in Raleigh on August 5th, he could not have reached Duplin Court by August 6th, at noon; that as soon as the fact of Mr. Busbee's absence was communicated to Mr. Schenck by wire, he telegraphed Mr. I. F. Dortch, local attorney of the company at Goldsboro, to repair to Duplin Court, but the Court had adjourned the same day the message was received.

Upon these facts, the Court adjudged that the default was occasioned by unavoidable accident and ordered that the

judgment by default be vacated, and that the defendant be allowed to file an answer or demur.

Plaintiff appealed.

Upon the call of the case in the Supreme Court, counsel of the parties agreed as follows:

" It is agreed that the Judge in the Court below did not base his ruling, setting aside the judgment rendered at August Term, 1891, upon his discretion, and that upon the facts found he held as a matter of law that the defendant was entitled to have the judgment set aside; but this agreement is not to be construed as an admission by defendant that if the matter was wholly within the discretion of the Judge, such discretion was not exercised in favor of defendant. It is also agreed, that upon the hearing of said motion the defendant filed affidavits in which it was alleged that the defendant was not negligent, and that the plaintiff was guilty of contributory negligence."

*Messrs. W. R. Allen* and *W. J. Peele*, for plaintiff.
*Mr. F. H. Busbee*, for defendant.

*Per Curiam :*

Taking all of the circumstances into consideration, we think that the ruling of his Honor was correct, and should be affirmed.

AVERY, J. (concurring): The question upon which the correctness of the judgment rendered in this case hinges, is not whether the agents of the defendant company exercised due diligence in transmitting the notice of the institution of the suit to its local attorney. It is conceded that if we apply the rule laid down in *Finlayson* v. *Insurance Co.*, and which marks the extreme limit to which this Court has gone in defining negligence on the part of suitors, the defendant's agents were guilty of such laches that the company would

not have been deemed excusable if Mr. Dortch had, in fact, received his notice to repair to Duplin Court too late. But if he had received notice of the pendency of the action within two days after the service of summons, or twenty-eight days before the term began, and had, nevertheless, remained at his office (in an adjoining county, from which he could reach Kenansville, where the Court was being held, in a few hours) until Thursday of the first week of the term, and being ready to take the train of that afternoon, received information that the Court had adjourned at 12 M., after rendering judgment by default against his client, the very same question would have confronted us that we are now called upon to decide.

The attorney had notice on Thursday, and would have been in attendance on the Court if it had continued in session the whole day. The law permitted the plaintiff, if his complaint was prepared thirty days before the beginning of the term, to withhold it from the files of the Court till the first Wednesday night of the term at midnight, or the last moment of the three first days. The practice for many years after the introduction of the new Code in 1868 was to allow the defendant till 12 o'clock of the last night of the term to answer, but the rule was first questioned in *Warren v. Harvey*, 92 N. C., 137, and since that time it has become the established practice to call the summons docket when the Court is on the eve of adjournment, and enter judgment final or by default, according to the nature of the case, where the plaintiff has filed a complaint and there is no appearance for the defendant.

If counsel for defendant had gone to Kenansville on Wednesday, he could not have calculated on having an opportunity to examine the complaint till the hour when the Court was opened, 9 o'clock or 10 o'clock A. M. on Thursday. So that he could not by extreme diligence have gained access to the record for more than two to three hours for the purpose of answering a complaint which the plaintiff had had

thirty-three days, in this particular instance, to consider, and which, in any case, he would have been allowed thirteen days at least to prepare. Had Mr. Dortch been present, therefore, it is altogether probable that he would have appealed to the Court to give further time to present his defence, after due deliberation and examination of authorities, and it is almost certain that a Judge would have granted the request unless it appeared to have been preferred merely for the purpose of delay. Had he refused a motion for further time to make a meritorious defence, his ruling would have been, to say the least of it, an extremely rigid exercise of the discretion with which he was clothed by the statute.

The Judge, in passing upon the motion to set aside the judgment, did not maintain that no discretion was allowed him by law, nor did he (admitting that it was vested in him) refuse, to the prejudice of the mover, to exercise it. On the contrary, he said, in effect: " I have discretionary power to grant or refuse the motion, but out of abundant fairness to the plaintiff, I wish to give him the opportunity of appealing from a ruling on the question of law really involved in the legal exercise of the power, by holding that, upon the facts found by me, the failure on the part of the company to have an attorney at the Court before the adjournment on Thursday was excusable neglect." While the granting or refusing of the motion upon the facts found, nothing more appearing, would not have been reviewable, yet, if the Judge really allowed it because he thought excusable neglect had been shown, he had a right, waiving his discretion, to rest his ruling upon the true ground, and to let this Court determine, as it always may do, whether a legal reason was given for the exercise of an unquestioned discretion. In *Rex* v. *Peters,* 1 Burr., 270, Lord MANSFIELD said that discretion was " another word for arbitrary will," but declared that it was (as Lord COKE had said) *discernere per legem quid sit justum.* *Judges* v. *People,* 18 Wend., 99; *Platt* v. *Munroe,* 34 Barb., 293.

This Court has repeatedly held that where a Judge was governed, in passing upon a matter entirely within his discretion, by an erroneous view of the law, the party injured by the mistake might, on appeal, have his judgment set aside. The appellate Court must determine, upon an admitted state of facts, whether there was excusable neglect on the part of a litigant in the conduct of an action, just as it must decide whether, according to an undisputed finding of facts, a party has shown such diligence as to save him from liability in an action brought to recover for negligence.    The present Chief Justice, in *Foley* v. *Blank,* 92 N. C., 478, said : "This Court has authority to determine what constitutes mistake, inadvertence, surprise or excusable neglect under *The Code,* § 274, but it has no authority to review or interfere with the discretion exercised by the Judges of the Superior Court under that section." If the Judge had granted or refused the motion without assigning a reason for his action, it would have been final, but when he said, in effect, "I grant the motion because, in law, the facts found by me constitute excusable neglect or surprise," then the appellate Court is called upon to say whether he was misled by an erroneous view of the law in the exercise of his authority, and, if he was in error, to send the case back so that it may be acted upon again; but if his view of the law was correct, his judgment must be affirmed. In the case last cited, this Court held that when a Judge "does not state the ground upon which he founded his order setting aside the judgment, * * * * if, in any respect of the motion before him, his action can be upheld, it must be done," thus clearly contemplating the possibility that a Judge might, at any time, state the grounds upon which he rested his ruling that a given state of facts constituted excusable negligence.    In that case, looking at the most favorable aspect of the evidence, the Court held that a judgment was properly set aside where the defendant filed his answer on Saturday of the second week of the term, after the Judge

had left on Friday before, without formally adjourning the Court. The facts before us constitute a much stronger case than was presented, by any view of the evidence, in *Foley* v. *Blank.*

A party who came into Court on Thursday with an attorney ready to answer a complaint that the plaintiff was not required to file till 12 o'clock the previous night, exhibited such diligence as the circumstances required. It must be remembered that the effect of the decision of this Court is to strike out a judgment rendered under a technical rule, and allow the defendant to answer, so that the case may be tried hereafter by a jury upon its merits. If, therefore, the Court has done more than justice to a corporation, an impartial jury of the country can be trusted, with the aid of a Judge, to apply the law to the facts and determine whether the plaintiff is entitled to recover at all, as well as fix the amount of damage, if any, that shall be awarded. I am unable to perceive how a grievous wrong can be done to the plaintiff by leaving the merits of his cause to be reached by the ancient method of trial by a jury of the country. I think that where counsel is employed at all, and is ready to answer for a defendant on the fourth day of the term, a complaint which the law has allowed a plaintiff thirty-three days to prepare, it is not inequitable to strike out a judgment by default entered within three hours after the defendant's attorney could reasonably expect, by the utmost diligence, to have an opportunity to examine the complaint and know how to prepare his defence. The law does not expect or require a defendant to know intuitively what the cause of action is, or how to answer immediately on reading the summons. I do not think that it was intended that a defendant with his attorney should be required to leave other engagements and sit in a court-room to await the pleasure of counsel on the other side, who will be held to have shown sufficient diligence if he arrive at the court-house on the third

night of the term. If it is equitable and lawful to allow this case, under all the circumstances, to be tried in the usual way, on its merits, it seems to me that the Court may venture to do justice, though the relief is granted to a corporation. This Court can know judicially no more of the capacity of this particular corporation to employ counsel, than it knows of the financial status of a citizen.

The right to relief against a judgment rendered under a technical rule of practice, must not be made to depend solely upon the movements of the sand in the hour-glass, or the uncertain progress of the Judge in disposing of the docket, but upon sound principles of equity and justice. Where there is doubt as to the proper method of disposing of such an application, it is always safe, when it can be done without violating the law, to have an action tried upon its merits, rather than determined upon a technicality.

MERRIMON, C. J. (concurring): This is a motion to set aside a judgment against the defendant through surprise and excusable neglect, in the Superior Court of Duplin County. It appears that the return term began on Monday, the 3d day of August, 1891, and the Court adjourned on Thursday next thereafter, it being the 6th day of the month. The plaintiff filed his complaint and obtained judgment by default and inquiry for want of an answer, before the Court adjourned. The defendant intended to make defence, and took steps to that end, but its counsel failed to reach the Court at the return term. He was instructed by telegram on the day the Court adjourned to attend and appear for the defendant. Subsequently, in apt time, it moved to set the judgment aside for surprise and excusable neglect. The Court heard the motion upon affidavits, found the facts, and that "the default was occasioned by unavoidable accident," and allowed the motion, upon the ground that the defendant, as a matter of law, was entitled to have the judgment set aside;

it did not allow the motion in the exercise of its discretion. The plaintiff excepted, and appealed to this Court.

The exercise of his discretion by a Judge of the Superior Court in relieving a party from a judgment taken against him, "through his mistake, inadvertence, surprise or excusable neglect," is not reviewable in this Court. The statute (*The Code*, § 274) expressly invests the Judge with discretionary power in such respects. But when he allowed a motion to set aside a judgment upon a state of facts found by him that in no legal view of them constitute "mistake, inadvertence, surprise or excusable neglect," or when he refuses to allow such motion upon the ground that the facts do not constitute such cause, this Court may review the question of law as to whether the facts, in some view of them, do or do not constitute such cause, and leave the Judge to exercise his discretion as allowed by the statute. If it appears in this Court that such cause existed, and the Judge, in the exercise of his discretion, allowed the motion to set the judgment aside, the order, in that respect, will be affirmed. If, however, it appears that, in no view of the facts, such cause existed, and he allowed the motion, the order allowing the same will be reversed. If he finds the facts, and allows such motion simply because such cause does or does not exist as a matter of law, and not in the exercise of his discretion, the order will be set aside, and he will be directed to allow or disallow the motion, in his discretion. The statute intends that the Judge, seeing all the facts and circumstances pertinent, and considering the merits of the motion, shall allow or disallow it in the just exercise of his discretion. He is better qualified to determine its merits than this Court, and besides, such motions should be disposed of promptly. *Branch* v. *Walker*, 92 N. C., 87; *Foley* v. *Blank*, 92 N. C., 476; *Taylor* v. *Pope*, 106 N. C.. 267; *Skinner* v. *Terry*, 107 N. C., 103; *Albertson* v. *Terry*, 108 N. C., 75; *Finlayson* v. *Accident Association*, 109 N. C., 196.

In case of appeal in cases like this, the Judge should always decide that there was or was not "mistake, inadvertence, surprise or excusable neglect," so that this Court might review his decision in that respect. It would be error if he declined to do so. The complaining party has the right to have that question decided, and afterwards reviewed here.

In this case, the findings of fact are not so full as they should be to enable us to decide that there was surprise or excusable neglect. It seems there was surprise. The plaintiff had the three first days of the term to file his complaint, and the defendent might have filed its answer at any time during the term, as it appears it intended to do; but the Court adjourned on Thursday of the week, the day, it seems, the counsel of the defendant intended to attend and appear for it. He may have been surprised by the adjournment of the Court at so early a day of the week. Granting, for the present purpose, that there was "surprise or excusable neglect," the Judge decided, as a matter of law, that the defendant was entitled to have the judgment set aside, and he did not exercise his discretion at all, as he should have done. If he had done so, it may be that he would have declined to allow the motion; he might have been of opinion that the motion was unimportant, and that it would not promote the ends of justice to allow it; he might have thought otherwise, but in any case, he should have allowed or disallowed the motion in his discretion, and not upon the simple ground that the defendant had the legal right to have it allowed.

CLARK, J. (dissenting): This was a motion to set aside a judgment for excusable neglect. An agreement of counsel is filed, and thereby made a part of the case on appeal, which recites that the Judge did not base his ruling upon his discretion, but held, as a matter of law upon the facts found, that the defendant was entitled to have the judgment set aside. From the facts found, it appears that the summons was

served on the defendant at Goldsboro on July 7th, return able to Duplin Court, which began August 3d; that on Tuesday, August 4th, the complaint was filed; that the Court adjourned in the afternoon of Thursday, August 6th; that no answer having been filed, a judgment by default and inquiry was entered; that the defendant did not select a counsel to represent it at such Court till that very day, and then chose one fifty miles away, instead of some lawyer in the county or at the Court, who, if selected, even at that late day, could have been reached and instructed by tele-graph. It is hard to see how it could be held, as a matter of law, that this entitled defendant to have the judgment set aside.

The law requires the summons to be served ten days before Court, to give the party time to employ counsel and instruct him as to his defence. This defendant was served twenty six days before Court met, and thirty days before the judgment was taken. If its agents were negli-gent in securing counsel, that has been always held by this Court to be the negligence of the defendant. *Finlayson* v. *Accident Association,* 109 N. C., 196, and cases there cited. It appears in " the facts found," that the agent on whom the summons was served at Goldsboro on July 7th, sent it to another agent (as required by defendant's " regula-tions" in such cases) at Atlanta, Georgia; that the head agent there delivered it to another General Agent in that place, who, after a delay (not attempted to be accounted for) of ten days, sent it on July 18th to another representative of the defendant at Greensboro, who, by mistake (whether ex-cusable or not is not explained), sent the papers—it does not appear that there was anything more than the simple sum-mons—to another General Agent in South Carolina; that by this latter, on July 20th, the papers were sent back to the company's representative at Greensboro, but by " some mis-chance" (as to which general expression no facts are found)

they were not delivered till August 4th, though it is found that the transmission was not by United States mail, but by the hands of another agent of the defendant. It is stated that being sick that day, the representative of the company on the next day, August 5th, sent the papers to another general representative living in Raleigh. It does not appear whether the latter was to act as counsel, or was another supervising agent to select counsel; but however that may be, he was not in Raleigh, and the telegraph being then first resorted to by still another agent, the general representative at Greensboro is advised of such fact. And then, sometime on Thursday, August 6th, after the adjournment of Court (for it is found as a fact "the Court *had* adjourned the same day"), counsel for the first time is asked to appear, and he not at the county seat where the case is pending, but fifty miles away. During the thirty days which had elapsed since service of process, the matter had been in the hands of nine different agents of the defendant that we know of, and at last the counsel selected was the regular counsel of the defendant in the same town of Goldsboro in which the summons had been served a month before. That some of these general agents were gentlemen of high distinction and lawyers of eminent ability, did not in my judgment justify the Court below in holding, "as a matter of law," that neither they nor any of the other numerous agents had not been guilty of inexcusable negligence.

The simple summons, giving notice that the defendant should appear and answer the complaint of the plaintiff, which would be filed on the first three days of Duplin Superior Court, which would begin on August 3d, and in default thereof that this very judgment, by default, would be taken, had been served in Goldsboro, had been sent "by regulations" of the defendant from one of its agents to another through three States, from point to point, from office to office, with no legal explanation of a single day's delay, and we are asked to say,

as a matter of law, that such negligence was excusable. That some of these agents were counsel (if the negligence was indeed theirs, and not that of some other of the agents who had the handling of this document), does not alter the fact that the negligence of a lawyer, who is not to appear in the cause himself, but is to employ other counsel, is the negligence of an agent *pro hac vice*, and that his neglect is the neglect of the defendant. The Court so held at last term in *Finlayson* v. *Accident Association*, 109 N. C., 196, and that case cites several precedents in this Court to the same effect. The ten days' delay of the summons in Atlanta, Georgia, from July 8th to 18th, is *prima facie* neglect, and no facts are found to excuse it. If the other twenty days are accounted for, there would still be inexcusable neglect. That the defendant's agent in South Carolina chose to send the papers by another agent of the company to its general representative in Greensboro, on July 20th, and that they were not received there till August 4th, "by some mischance," is *prima facie* negligence, at least of the intermediary agent, and being unaccounted for, and no inquiry made for the missing paper, it is difficult to see how, as a matter of law, it can be held that the defendant was not liable for such neglect of its agent. *Churchill* v. *Insurance Co.*, 92 N. C., 485; *Boing* v. *Railroad*, 88 N. C., 62. Again, when the papers were received by the defendant's representative at Greensboro on August 4th, he knew from the face of the summons itself that Duplin Court had then been in session two days. He wrote a letter to the representative in Raleigh, who being a prominent lawyer in large practice, could not be expected to be always at home. Use of the telegraph instead of the mail would have brought that information, and a telegram to the counsel finally employed at Goldsboro could have been sent Wednesday morning in full time for counsel to have attended, if indeed, the Court being in session, the telegram, in view of previous delays, should not have been sent direct, on Wednesday, to

some counsel in Duplin. Such counsel could have been
instructed by telegraph as to the answer, or the defendant
could, at least, have shown diligence by laying the facts
before the Court and applying for time. The failure, under
the circumstances, to use the telegraph, was inexcusable neg-
lect. *Bradford* v. *Coit*, 77 N C., 72: *Finlayson* v. *Accident
Association, supra.* The Court was a one week's term. The
complaint was filed on Tuesday. The answer certainly could
have been filed before adjournment on Thursday, which was
no "surprise," and not unusual in practice. To hold such
adjournment to be "legal surprise," would render judgments
by default invalid in all cases except where the Court has
business to occupy it the full term. There can be no pretence
that there was not ample time in which to file the answer,
as could legally have been done at any moment of the forty-
eight hours which elapsed between the filing of the complaint
and the judgment of Court, in the regular course of business,
on Thursday afternoon. The true reason why the answer
was not filed is not this at all, but because the defendant had
no attorney, and did not secure one till that day, and after
the adjournment of the Court, and he many miles away from
the place where the Court was being held. It was the duty
of the defendant to take notice of summons and process
served upon it, and when its failure to do so was caused by
the negligence of its agents, it became liable to a judgment
by default, like anyone else. The plaintiff, it is true, was
entitled to three days to file his complaint. This was a priv-
ilege. He was not compelled to wait that long. When he
filed his complaint on Tuesday, the defendant having been
put in Court by service of summons, was fixed with notice.
It then became its duty to file its answer before Court
adjourned. There were forty-eight hours in which to do so
between the time the complaint was filed and the adjourn-
ment of the Court. It is not found, or even suggested, that
the defendant could not then have filed its answer before the

adjournment, as doubtless all other litigants at that term did. But if it could not, it was inexcusable neglect that the defendant did not have counsel there to apply to the Court for an extension of time, which the Court had the discretion to grant, and doubtless would have granted in a proper case. Had the defendant been a citizen of Duplin, and waited thirty days after service of process, and two days after complaint filed, and not employed counsel till the day Court adjourned, and after its adjournment, and then employed one not attending the Court, but fifty miles away, would not this have been inexcusable neglect, and does not the same rule apply to the defendant here? The fact of its being a non-resident of the county could make no difference after summons actually served.

Amid all this commotion, and marching and counter-marching of this mere copy of a summons, there is danger of forgetting that there is a plaintiff who, ordinarily, would have the legal right to a judgment by default, if the defendant paid no attention to the action after having been served with summons ten days before Court. That the defendant chooses to do its business in this way, is a matter of which no one can complain. If it wishes to enjoy the luxury of a "circumlocution office," it has a right to do so. But when it seeks to have it held "as a matter of law" that the use of such methods is excusable neglect, and that the plaintiff must yield his rights, and the Courts conform their procedure to the defendant's peculiar method of taking thirty days to get notice of the summons, served on the defendant in Goldsboro, to its counsel living in Goldsboro, neither reason or precedent can be found to support the position. The delay of thirty days to procure counsel after service of summons is inexcusable neglect. It was the neglect of some agent or agents of the defendant. It is not so difficult to find a lawyer to represent any defendant that more than thirty days was required here, when the law allows only ten

days for that purpose to other defendants. The neglect of the defendant's agents was its neglect. It is immaterial which one of the agents was responsible for it. Their aggregate neglect was at the door of the defendant. It had the selection of its own agents. If the fault, as is probable, was in the peculiar "regulations" of the defendant, it is the negligence of the corporation that it has such. It cannot ask that, therefore, the Court should construe the law differently as to it from the rulings heretofore made in numerous cases. The Court say, in *Sluder* v. *Rollins,* 76 N. C., 271, that "the least that can be expected of a person having a suit in Court is that he shall give it that amount of attention which a man of ordinary prudence usually gives to his important business," and that a failure to do so is inexcusable neglect. *Kerchner* v. *Baker,* 82 N. C., 169. *Sluder* v. *Rollins* has been cited and approved, also in *Hodgin* v. *Matthews,* 81 N. C., 289; *Cobb* v. *O'Hagan, Ibid,* 293; *University* v. *Lassiter,* 83 N. C., 38; *Henry* v. *Clayton,* 85 N. C., 371; *Depriest* v. *Patterson, Ibid,* 376; *Churchill* v. *Insurance Co.,* 88 N. C., 305; *Roberts* v. *Allman,* 106 N. C., 391. The attention given this case by the agents of the defendant was not such as "a prudent man would give his important business." That the neglect here was that of agents, gives the defendant no greater privilege than an individual, as a corporation must necessarily act through agents, and their neglect is the neglect of the corporation. In no aspect is this case as strong for the defendant as in *Churchill* v. *Insurance Co.,* 92 N. C., 485 (which is more nearly like it than any other), where the Court say the facts were not sufficient legal excuse which should be allowed to deprive the plaintiff of his legal rights in the premises. If this state of facts constitutes excusable neglect, it would be difficult to conceive any possible combination of circumstances under which this defendant could be guilty of inexcusable neglect, unless it be that the "regulations" of the defendant might possibly have required this copy of a summons to be submitted to the

110 — 31

scrutiny and gaze of a still greater number of its representatives in a greater number of cities and States.

It would seem that amid the " numerous and multitudinous" handlings of this summons for thirty days by so many agents, that the defendant should be fixed with notice of its contents, and of the place and time where and when it should appear, and of the notice therein that if it did not this judgment would be entered, and that it was inexcusable that it did not pay enough regard to it to employ counsel. I cannot concur in the ruling below that the whole thing was in law " an unavoidable accident."

The defendant's contention that the case should be tried by a jury, and not upon a technicality, if logical, would, by a judicial construction, abolish all judgments by default (if such judgments can be called a technicality). The statute gives the plaintiff a legal right to have such judgment when the defendant neglects in apt time to put in his defence. If such judgments can always be struck out as of right, defendants could always obtain delay by showing a contemptuous disregard of the process of the Court, or neglecting to answer the complaint till it suited their convenience. In truth, in law and in reason a judgment by default is as valid as any other, and can only be set aside when the failure to answer in apt time was not caused by the negligence of the defendant or its agents. The rule that where the negligence is that of counsel the defendant can have the judgment set aside is a matter of grace, and has never been extended beyond the negligence of the counsel actually appearing in the cause, and not even that far unless the defendant was diligent, and himself without laches. *Bradfort* v. *Coit*, 77 N. C., 72; *Roberts* v. *Allman*, 106 N. C., 391. It is true, if defendant had employed counsel in time, he *might* have been negligent in putting in the answer in time, and the defendant usually would be excused, but it is a *non sequitur*

that therefore the defendant's negligence in not employing counsel in time is excusable.

Whether the facts found constitute excusable or inexcusable neglect, is subject to review. Our decisions are uniform that, if there is excusable neglect, the Court, in its discretion, may grant, or not, the motion to set aside the judgment. But if the neglect is inexcusable, it cannot set it aside. I think the Court below erred—(1) in not holding the neglect inexcusable; (2) if it had been excusable neglect, in holding that, as "a matter of law," the judgment should be set aside. It would, in that case, have been matter of discretion.

Upon the findings, in any aspect of them, the defendant is not entitled to have the default set aside, for it is not found that it has a meritorious defence. *Bank* v. *Foote,* 77 N. C., 131. It is not entitled to have the case sent back to have an express finding on that fact. Not having been found, it is to be deemed not to exist.

It is said by ASHE, J., in *Churchill* v. *Insurance Co.*, 88 N. C., 205: "A party seeking to vacate a judgment under section 133 (now 274) of *The Code* is always at default, and the *onus* is upon him to show facts which would make the refusal to vacate an abuse of discretion. *Kerchner* v. *Baker*, 82 N. C., 169."

I think the ruling below should be reversed, and the case sent back, that the plaintiff should execute his inquiry before a jury at the next term, according to the regular procedure of the Courts.

*Per curiam.* · Affirmed.