## CHICAGO, R. I. & P. RY. CO. v. EASTHAM *et al.*

### No. 393. Opinion Filed July 12, 1910.

#### (110 Pac. 887.)

**JUDGMENT—Default—Motion to Vacate—Unavoidable Delay.** In an action filed in a county court, the answer day was July 21, 1908. July 20, 1908, counsel for defendant in another county deposited in the United States post office, postage paid, an envelope addressed to the clerk of the county court containing a motion, directed to plaintiff's petition. In due and regular course of mail the said motion would have reached its destination in time, but by reason of the miscarriage of the mail the same was delayed and arrived a day late. At the time of its arrival, the court was engaged in trying the cause. Counsel for defendant, prior to the conclusion of the trial and the rendition of judgment, asked leave to file the motion, which was by

the court denied and judgment rendered as on default. Counsel for defendant filed a motion for a new trial, alleging accident and surprise, setting up the foregoing facts with a showing of defense to plaintiff's action. This motion the court denied. **Held,** error.

(Syllabus by the Court.)

*Error from Coal County Court; R. H. Wells, Judge.*

Action by Dalphus Eastham and others against the Chicago, Rock Island & Pacific Railway Company. Judgment for plaintiffs, and defendant brings error. Reversed and remanded.

*C. O. Blake, Thomas R. Beman, Foshee & Brunson,* and *J. G. Ralls,* for plaintiff in error.

*D. H. Linebaugh,* for defendants in error.

DUNN, C. J.   This action was begun on June 25, 1908, by R. M. Eastham, as plaintiff, against the Chicago, Rock Island & Pacific Railway Company, as defendant, in the county court of Coal county, Okla.   Judgment was rendered for plaintiff, and the defendant appealed the case to this court.   While pending here, suggestion of the death of the plaintiff was made, and by stipulation the case is revived by Dalphus Eastham and Arthur Eastham, as the sole and only heirs at law of R. M. Eastham, deceased.   In the petition filed by the said decedent, it was alleged, in substance, that plaintiff was the owner of lot No. 2 in block No. 27, in the city of Coalgate, together with all the improvements thereon; that the defendant company subsequent to the acquisition by plaintiff of this property constructed a branch line of railroad from near its Coalgate station to the city of Lehigh, and in the construction of said road erected a heavy embankment of dirt from six to eight feet high, which filled up and stopped a natural water course about two blocks east of the property mentioned; that this embankment during the months of April, May, and June, 1908, and at other times, caused the water naturally flowing in this stream to accumulate, back up, spread out, inundate, and cover plaintiff's property, which was his home; and that the water compelled him to abandon

the same—all of which acts resulted in damages in an amount averred to be $750. Summons was issued and served upon the defendant requiring it to answer on or before the 21st of July, 1908. The defendant company having failed to answer or otherwise plead on July 22, 1908, counsel for plaintiff filed a motion asking that judgment be rendered against the defendant as on default, and that the court impanel a jury for the purpose of assessing damages. This motion was by the court at 2 p. m. on the said 22d of July, 1908, sustained, and the plaintiff, after waiving a jury, requested the court to hear the evidence and assess the damages, which was done, and a judgment was rendered for plaintiff in the sum of $745. In the transcript before us immediately following the recital of judgment there appears a paper entitled "motion to require the plaintiff to make his petition more definite and certain," and which sets out in detail wherein the petition of plaintiff is averred to· be indefinite and uncertain. This paper appears to be indorsed: "2 :40 p. m., refused to file for the reason that it was offered during the trial and before judgment. R. H. Wells, County Judge. July 22, 1908. Filed at 4 p. m. after judgment rendered by court. J. F. Threadgill, *Ex Officio* Clerk of County Court." On the same day counsel for defendant filed a motion to set aside and vacate the default judgment entered, in which was set up a number of grounds tending to show accident and surprise which prevented counsel from having filed prior to the expiration of the statutory time, the motion last above referred to. Within three days thereafter and on July 25, 1908, counsel for defendant filed a motion for a new trial setting up the statutory grounds, and thereafter filed a paper entitled "amendments to motion for a new trial," which is merely a statement in detail of the grounds for the same.

This showing is verified, and one of the paragraphs thereof is as follows:

"The court was informed prior to entering judgment that the general attorney for the defendant had mailed to the clerk of said court pleadings to be filed, and had mailed same in time for

them to have reached said court on the answer day, and this case not being set for trial, the court should have given reasonable time for said pleadings to reach their destination, and defendant shows that in truth and in fact in cases pending in the county court of Coal county, Okla., it is the duty of the general attorney, C. O. Blake, and his assistant, Thomas R. Beaman, to prepare all pleadings to be filed in court, and that the local attorneys, Foshee & Brunson, had no authority to prepare such pleadings and are not general attorneys for this defendant, but only act under special direction from the general attorney; that said pleadings were prepared by the said Thomas R. Beaman and deposited in the United States post office at El Reno, Okla., about 6 o'clock p. m. on the 20th day of July, 1908; that in due course of mail the same should have arrived at Coalgate at 12:45 p. m. on the 21st of July, 1908, going from El Reno to Oklahoma City on the Chicago, Rock Island & Pacific, and from Oklahoma City to Coalgate on the Missouri, Kansas & Texas; that the mail was making said time regularly, and defendant had a right to and did rely upon said mail making said time; and that, if it did not, it is not the fault of this defendant. Defendant says that said pleading was a motion to require said plaintiff to make his petition more definite and certain by paragraphing his different causes of action, and by stating the dates of the alleged overflow and alleging the value of the various items for which he claims damages; that such pleading should have been sustained, and the plaintiff should have been required to have amended his petition in conformity therewith. The defendant says that it inclosed said motion with a letter in an envelope together with a general motion in the case of O. T. Reese v. this defendant, and addressed said envelope to the clerk of the county court, Coal county, Okla., and that said envelope containing said pleadings was placed in the outgoing mail by the postmaster at El Reno at 8:30 p. m. July 20, 1908, as shown by the original envelope which is attached to the defendant's motion to set aside and vacate default judgment, which was filed July 22, 1908, and marked 'Exhibit A'; and defendant says that said envelope containing said motion and letters in due course of the mail should have been received by the clerk of this court not later than 1:30 p. m. the 21st day of July, 1908, and should have been filed on said day; and defendant says that it is informed that said envelope did not reach Coalgate until after said hour, and that

on examination of the back of said envelope the same appears to be stamped as follows: 'Coalgate, Okla., Jul. 22 8 a m 1908.' And defendant says that said envelope had been carried by Coalgate to Atoka by an oversight of the mail clerk and returned to Coalgate on the evening of the 21st day of July, and defendant says that this was an unavoidable accident which ordinary prudence could not have guarded against."

And further that:

"The plaintiff was the only witness in his behalf, and he, for the purpose of deceiving the court, falsely testified that the damages to the house and orchard were about $250, and that a reasonable value of the lot with the orchard before the railroad was constructed was $450, and that after its construction it was of no value at all, and that the damages to the household effects and the house was $200, when in truth and in fact said lot was not worth over $50 and said house was not worth over $75, and that the damage to the said house was not over $10 if anything, when in truth and in fact there was no damage done to the said household effects of said plaintiff, all of which the plaintiff well knew at the time he was so testifying, and defendant says that plaintiff so testified for the purpose of perpetrating a fraud not only upon this defendant but upon the court."

In support of the proposition last noted, there was filed a number of affidavits of parties living in and around Coalgate. The court denied both the motion to set aside the judgment and the motion for a new trial. Counsel for defendant prepared, had allowed, and filed a bill of exceptions making the matters hereinbefore referred to a part of the record, and have brought the same to this court on transcript, and we are asked to review and reverse the action of the trial court.

In the case of *Corning & Horner v. Tripp,* 1 How. Prac. (N. Y.) 14, it appears that counsel for defendant mailed his answer to the clerk of the court. He placed the same in the post office prepaying the postage thereon. In the ordinary course of mail it would have reached the clerk two days thereafter, but the same was not received by the clerk until seven days thereafter. On the day before it was received, judgment was entered for the plaintiff by

default. The court on a showing of these facts by the defendant opened the case and allowed him to plead.

The case of *Williams v. Richmond & Danville Railroad Co.*, 110 N. C. 466, 15 S. E. 97, was a case wherein judgment was entered by default and was afterwards set aside by the Supreme Court of North Carolina upon a showing of facts as follows:

"The summons was served July 7th, on the station agent at Goldsboro, and by him duly forwarded to the headquarters of the company at Atlanta, according to regulations, by the managing officer delivered to the general southern counsel, and by them, on July 18, 1891, all the papers were sent to David Schenck, the counsel for the North Carolina Division. That by mistake the papers were sent to Mr. Cothran, the counsel for the South Carolina Division, along with papers in two other cases. On July 20th, 15 days before court met, Mr. Cothran sent the papers to Mr. Schenck, but by some mischance the papers were not received by Mr. Schenck until the night of August 4th. That these papers were sent by railway mail, a method of transmission of papers and letters through baggage masters universally adopted by this and other railroads, and usually safe and reliable. That Mr. Schenck was sick when the papers were received, but on the next day sent the papers to F. H. Busbee, who was an attorney, resident in Raleigh, N. C., having charge of the business of the Richmond & Danville Railroad in Eastern North Carolina, including Duplin county. That Mr. Busbee had left Raleigh, by the advice of a physician, the day the papers were sent, August 5th, and did not receive them. That if he had been in Raleigh on August 5th he could not have reached Duplin court by August 6th, at noon. That as soon as the fact of Mr. Busbee's absence was communicated to Mr. Schenck by wire he telegraphed Mr. I. F. Dortch, local attorney of the company at Goldsboro, to repair to Duplin court but the court had adjourned the same day the message was received. Upon these facts the court adjudged that the default was occasioned by unavoidable accident and ordered that the judgment by default be vacated, and that the defendant be allowed to file an answer or demur."

The court in the consideration of that case said:

"It must be remembered that the effect of the decision of this court is to strike out a judgment rendered under a technical

rule, and allow the defendant to answer, so that the case may be tried hereafter by a jury upon its merits. If, therefore, the court has done more than justice to a corporation, an impartial jury of the county can be trusted, with the aid of a judge, to apply the law to the facts and determine whether the plaintiff is entitled to recover at all, as well as fix the amount of damage, if any, that shall be awarded. I am unable to perceive how a grievous wrong can be done to the plaintiff by leaving the merits of his cause to be reached by the ancient method of trial by a jury of the country. * * * The right to relief against a judgment rendered under a technical rule of practice must not be made to depend solely upon the movements of the sand in the hourglass, or the uncertain progress of the judge in disposing of the docket, but upon sound principles of equity and justice. Where there is doubt as to the proper method of disposing of such an application, it is always safe, when it can be done without violating the law, to have an action tried upon its merits, rather than determined upon a technicality."

In the case of *Smith v. Rawlings' Adm'r et al.*, 83 Va. 674, 3 S. E. 238, it appeared that, when the case was called for trial, counsel for Smith moved for a continuance because Smith desired to be a witness on his own behalf and was absent. This motion was overruled and the case proceeded with. Two days thereafter Smith appeared in court and filed an affidavit in which he stated:

"That he had started for Amherst courthouse on the morning of the 10th of April, 1884, the first day of the term, on the Richmond & Alleghany Railroad, to connect at Lynchburg with a train running to Amherst courthouse; that the train on the Richmond & Alleghany Railroad failed to connect at Lynchburg, the early freight train having just left; and that he then took the next train, which started at 10:30 o'clock a. m.; but that this last-named train was delayed on the route; and that when he reached Amherst courthouse the trial was over."

In the consideration of these facts the court said:

"The failure of Smith to attend at the trial cannot fairly be imputed to negligence on his part. He started for court in time to have reached there before the case was tried, we may safely assume from the failure of the record to disprove it, if the trains on the Richmond & Alleghany Railroad had not failed to connect

at Lynchburg with the trains running to Amherst courthouse. He then took the next train for that place, and, but for its being delayed on the route, it seems probable that he would have reached court before the trial had ended. In any event, he, the plaintiff in error, seems to have used reasonable and proper efforts to attend the trial, and his failure to reach the court in time should be imputed to an accident which he could not foresee, rather than negligence on his part."

· The uncontroverted showing made in the record before us is that had there been no miscarriage in the mail the motion prepared by counsel would have reached Coalgate at about noon of the 21st day of July, 1908, instead of the next day. The record shows that defendant's motion reached the hands of the court during the taking of the evidence and prior to the rendition of judgment, and on the reasoning of the foregoing cases we hold the court erred in the exercise of its discretion in denying to defendant the right to file it and be heard upon it and in proceeding to render judgment as was done. No testimony was taken on the hearing except that of plaintiff, and the affidavits filed show conclusively that plaintiff's recovery is far in excess of his damage. Every litigant is entitled to his day in court. Being free from fault, no mere accident should foreclose against plaintiff his right to have his claim against the defendant tried and determined; but the scales of justice should be held in equal poise, and the defendant is likewise entitled to have its day in court and to have its defense against the claim of plaintiff heard, and no accident not its fault should foreclose this right on its part.

The cause is, accordingly, remanded to the county court of Coal county, with instructions to set aside the judgment heretofore entered, and allow defendant to file its motion.

All the Justices concur.