## NATION v. SAVELY et al.

No. 17371. Opinion Filed Oct. 11, 1927.

(Syllabus.)

1. Judgment—Vacation of Default Judgment for "Irregularity in Obtaining Judgment"—Lack of Notice to Defendant as to Trial Date—Discretion of Court.

Sections 579 and 580, C. O. S. 1921, relating to the time and manner of setting cases for trial and publication of the trial docket before the regular session or term of court, are vital provisions for the benefit of litigants; and by virtue of the first clause of the third subdivision of section 810 of the statutes, where a default judgment has been rendered, the aggrieved person, by a reasonable application, upon showing that these statutes were not complied with, may have the judgment set aside at or after the term after such judgment or order was rendered, unless such aggrieved person had actual notice of the trial in time to appear and defend or prosecute his cause. The second clause of said subdivision of section 810 of the statutes, which provides for relief against "an irregularity in obtaining a judgment," is in its nature a flexible provision addressed to the sound legal discretion of the court—to the trial court primarily, and to this court on review.

2. Same—Judgment Taken Without Notice Properly Set Aside.

In this case it is held that, where the plaintiff, upon whom rested the initiative, permitted his cause to lie dormant for five years without further pleading to the an-

swer, or electing to stand on his demurrer thereto, but went into court and took judgment without notice to the attorney representing the adverse party, such constitutes an irregularity which clearly warranted the trial court in setting aside the judgment after term time and granting a new trial.

Commissioners' Opinion, Division No. 2.

Error from County Court, Oklahoma County; C. C. Christison, Judge.

Proceeding by motion of W. H. Savely and Terry Marlin against W. E. Nation to set aside a judgment rendered against them at a previous term of the court. Motion sustained, and judgment set aside. Plaintiff brings error. Affirmed.

Shirk, Danner & Mills, for plaintiff in error.

Snyder, Owen & Lybrand and McCollum & McCollum, for defendant in error.

HALL, C. This case presents a part or one stage of the evolution of a certain lawsuit filed in a court of a justice of the peace in the year 1913, which reached the Supreme Court under the style of Nation v. Savely, 66 Okla. 229, 168 Pac. 805, out of which evolved Nation v. Savely et al., 74 Okla. 23, 176 Pac. 937. This appeals brings the latter case to this court for a second time, but upon somewhat different issues.

On November 29, 1913, W. H. Savely, who is a defendant in error in this action, commenced an action against W. E. Nation, plaintiff in error herein, before a justice of the peace of Pawnee county for the sum of $144. On that date the said W. H. Savely filed with the justice of the peace an attachment affidavit for the attachment of Nation's property, and an attachment bond in the sum of $288 with Terry Marlin as surety. The order of attachment was executed. On January 6, 1914, the justice of the peace rendered judgment for the plaintiff, W. H. Savely, and against defendant, W. E. Nation, and sustained the order of attachment. Within the time provided by law, Nation filed an appeal bond with the justice of the peace, and appealed the cause to the district court of Pawnee county. Whether the defendant's property was released upon filing this appeal bond is not disclosed by the proceedings.

On February 3, 1915, the cause was tried in the district court of Pawnee county; and it appears that the court and counsel representing the defendant were first under the impression that both the main action and the ancillary action, the attachment, were before that court on appeal. The court at first rendered judgment to that effect and dissolved the attachment. At a subsequent date, and within the term time, he modified the judgment to the extent of sustaining a demurrer to the evidence pertaining to the attachment phase of the case, apparently basing his decision upon the theory that in such a case two separate appeals must be taken, one from the main action and one from the ancillary action. This was the contention of the attorneys representing the plaintiff, and it appears to be their contention still.

The case was appealed to the Supreme Court, and this court held that the court below was correct in sustaining a demurrer to any evidence as to the wrongfulness of the attachment, but sustained it upon the grounds that the appeal bond executed by the defendant automatically dissolved the attachment, and that there is no provision in our law providing for an appeal from an order of the justice of the peace in sustaining an attachment.

On February, 8, 1915, the said W. E. Nation, who is plaintiff in error in this action, and who will be hereinafter referred to as plaintiff, filed in the county court of Oklahoma county his petition against W. H. Savely and Terry Marlin, defendants in error herein, who will be hereinafter referred to as defendants, alleging a wrongful issuance of the order of attachment as aforesaid by the defendant Savely, alleging that he had suffered injuries and asked damages against the defendants, the obligors on the attachment bond in the sum of $288, and interest and attorney's fee. The defendants filed a motion to abate this cause of action and the plaintiff filed a motion to strike the motion of defendants to abate the action, which motion to strike was based upon the ground that the matter therein set up was not proper matter for a motion, but, if pleaded at all, should be incorporated into an answer. Plaintiff also filed a demurrer to the defendants' motion. On August 23, 1915, the plaintiff's demurrer and motion to strike were overruled, and defendants' motion to abate the action was sustained. From this judgment or order the plaintiff appealed to the Supreme Court, and in the case of Nation v. Savely et al., 74 Okla. 23, 176 Pac. 937, this court reversed the judgment of the lower court, and held that it was improper to sustain the motion to abate the action, but further held that the motion to abate should be treated as an answer to the petition. On January 4, 1919, the mandate and copy of the opinion were filed among the files of the case in the office of the court clerk of Oklahoma county. The case lay dormant for

nearly five years; then, on February 14, 1924, the county court rendered a judgment in said cause in favor of plaintiff and against the defendant in the sum of $288 plus interest and an attorney fee of $50. The defendants made default; that is, failed to appear at the trial. On the 20th day of May, 1925, the defendants appeared in court and filed their motion to vacate the judgment upon the grounds that they had received no proper notice of the setting of the case for trial, and further that the judgment was void, alleging that the question had become moot. Service of this motion was made on the attorneys representing the plaintiff, and they appeared specially and contested the motion. On April 2, 1916, the county court sustained the motion to vacate and set aside the judgment and rendered judgment accordingly, from which judgment or order the plaintiff lodged in this court its appeal, and that is now the question before us, together with such other angles and ramifications of the case as are necessary for a rational determination of the issues therein.

The principal issue in this case is whether or not, upon the facts disclosed, the court was warranted in setting aside the judgment rendered at a previous statutory term of the court.

Default judgments rendered in cases where the claims are contested or challenged by pleadings which are not frivolous should be looked upon with considerable suspicion.

Undoubtedly the lawmakers, in enacting sections 579, 580, and 810, C. O. S. 1921, intended to afford some means of protection to a person against whom a default or "snap" judgment has been rendered: (1) Where the provisions of said sections 579 and 580 have not been complied with, unless the person against whom the judgment is rendered, or his attorney, is given actual notice of the proceedings at such a time prior to the trial as will enable him to appear before the court and protect his rights; (2) or in any case where there has been a substantial irregularity in obtaining the judgment, such as a course of conduct on the part of the person taking the judgment as is calculated to be misleading to the adverse party, or such as would be distinctly inconsiderate of his substantial rights, one of which is the right to his day in court, to be present or represented at the trial.

The term "irregularity in obtaining a judgment" has no fixed legal meaning. In every instance the question is one of fact,

dependent upon the circumstances of each case. It logically follows that the application of this provision of the statute is addressed to the sound legal discretion of the court, to be exercised in furtherance of justice, on the particular facts of the case. It will be observed that we use the expression "sound legal discretion," which negatives arbitrary action or unsound exercise of discretion. In other words, it is an abuse of discretion or reversible error to vacate a judgment where the moving party shows no recognized legal ground therefor.

"On the other hand, if he shows himself plainly and justly entitled to the relief demanded, the court must grant the application, and has no discretion to refuse it." 34 C. J. 370; Albright v. Warkentin, 31 Kan. 442, 2 Pac. 614; McSpadden v. Richardson, 59 Okla. 124, 157 Pac. 1153; Griffin et al. v. Jones et al., 45 Okla. 305, 147 Pac. 1024; Hodges v. Alexander, 44 Okla. 598, 145 Pac. 809.

The rule is well stated by the Supreme Court of California in Bailey v. Taaffe, 29 Cal. 423, as follows:

"The discretion intended, however, is not a capricious or arbitrary discretion, but an impartial discretion, guided and controlled in its exercise by fixed legal principles. It is not a mental discretion, to be exercised ex gratia, but a legal discretion to be exercised in conformity with the spirit of the law, and in a manner to subserve and not to impede or defeat the ends of substantial justice. In a plain case, this discretion has no office to perform, and its exercise is limited to doubtful cases, where an impartial mind hesitates."

The rule in different language was stated by the Supreme Court of Washington, in Moody v. Reichow, 80 Pac. 461, as follows:

"Discretion must, however, be exercised for reasonable cause, and upon such grounds as may reasonably happen to a person in the exercise of ordinary diligence in the protection of his rights."

In this state, and in practically all the various jurisdictions, statutes of the particular nature under consideration receive a liberal construction, and permit a liberal exercise of discretion to grant a party his day in court, provided he excuses his default and presents a seasonable application for relief, and shows that his defense or claim is not frivolous.

The rule stated in Corpus Juris, vol. 34, p. 296, is as follows:

"Such statutes are entitled to a liberal interpretation so as to advance the remedy."

Upon this point, and the whole proposition, the parties are referred to the follow-

ing authorities: Hale et al. v. McIntosh, 116 Okla. 40, 243 Pac. 157; Sharum v. Dean et al., 118 Okla. 95, 239 Pac. 666; Hoffman v. Deskins, 94 Okla. 117, 221 Pac. 37; Carter v. Grimmett, 89 Okla. 37, 213 Pac. 732; Anderson v. Graham, Adm'x, 87 Okla. 278, 210 Pac. 281; Cooper v. Rhea, 82 Kan. 109, 107 Pac. 799, 136 A. S. R. 100, 29 L. R. A. (N. S.) 930, 20 Ann. Cas. 42; C., R. I. & P. Ry. Co. v. Eastham et al., 26 Okla. 605, 110 Pac. 887; Roberts v. Hope, 39 Okla. 173, 134 Pac. 434; Hodges v. Alexander, supra; Griffin v. Jones, supra; Whise v. Whise (Nev.) 131 Pac. 967, 47 L. R. A. 689. In the last-named case, in construing a statute similar to ours, the court said:

"(1) Section 3163 of the Code, in the light of which this case must be considered (Cutting's Compiled Laws) sets forth: 'The court may in furtherance of justice, * * * upon such terms as may be just, and upon payment of costs, relieve a party or his legal representatives from a judgment, order, or other proceeding taken against him through his mistake, inadvertence, surprise, or excusable neglect.' This is in the nature of a remedial statute; its object was to relieve litigants who, through some inadvertence, such as is common to mankind, might be deprived of a hearing upon the merits through their unintentional failure to bring themselves within a rule."

In this connection, the language of Justice Avery of the Supreme Court of North Carolina, in the case of Williams v. Richmond & Danville R. R. Co., 110 N. C. 466, 15 S. E. 97, was quoted with approval by this court in the case of C., R. I. & P. Ry. Co. v. Eastham et al., 26 Okla. 605, 110 Pac. 887, as follows:

"The right to relief against a judgment rendered under a technical rule of practice must not be made to depend solely upon the movements of the sand in the hourglass, or the uncertain progress of the judge in disposing of the docket, but upon sound principles of equity and justice. Where there is doubt as to the proper method of disposing of such an application, it is always safe, when it can be done without violating the law, to have an action tried upon its merits, rather than determined upon a technicality."

In the North Carolina case, application for relief was made one day after the court had adjourned.

In its last analysis, an application to vacate a judgment or order, when such application is made after the expiration of the term at which it was rendered, is in the nature of an appeal addressed to the equitable powers of the court, and so far as the same does not conflict with some positive law, is to be disposed of upon equitable principles so as to do justice to all persons or parties concerned. Therefore, the discretion exercised, or action of the trial court in these matters, is subject to review by this court upon the same rules which govern the review of purely equitable actions.

In the present case, it is clearly shown that the complaining party, the defendants, had no actual notice of the setting of this case, and were not present at the trial; the motion, however, fails to state that the court, or court clerk, failed to set this case for trial as provided by said section 579 of the statutes, or failed to publish the same in the printed docket as required by section 580, before the term of court during which the judgment was rendered.

It is to be observed that the language of the statute is "term of court," but the word "term," as used in these two particular sections, is synonymous with the word "session," and does not necessarily refer to the beginning of the statutory term of the court.

Notwithstanding this, we think that defendants amply alleged sufficient facts to bring themselves within the second clause of the subdivision of the said section of the statute, section 810. The plaintiff in the case was the moving party, or the party assuming the initiative. The defendants were not asking for affirmative relief. The defendants had on file a pleading in the nature of an affirmative defense. The plaintiff had permitted its action to lie there dormant for about five years, and had not used or exercised sufficient diligence to file his reply to the answer or elect to stand on his demurrer. In view of these facts, it is our opinion that it was an irregularity for the plaintiff to go into court and take default judgment in the case, in the absence of the adverse party or his attorney having actual notice thereof; and we think that the lower court was correct in setting aside the judgment and granting a new trial.

The action of the lower court, if needs be, becomes better fortified, when we consider the rare and peculiar history of this case. Upon a former appeal, the writer of the opinion used some language indicating that the motion to abate (which this court treated as an answer) was a good defense to the action. In fact, in the first opinion it was held that the answer alleged sufficient facts to constitute a complete defense. This opinion, however, was later withdrawn and the case was reversed. But the writer of the opinion, who also wrote the former

opinion, carried over or incorporated into the body of the latter opinion some expressions which he had used in the former, to the effect that the action could not be maintained. This is perhaps the reason why both plaintiff and defendants thereafter treated this case with such apparent indifference.

The defendants contend that the judgment vacated in this case was void; that such judgment was based wholly upon a moot question and issue in the case; and in support of this contention they rely upon the former decisions of this court involving these parties and this subject-matter.

From a naked technical point of view, the contention is not without some merit, but the merit is more apparent than real. In this connection it is the opinion of this writer, that the documentary matters pleaded in the answer of defendants would not, of themselves, or as a matter of law, defeat the plaintiff's cause of action.

When this case (Nation v. Savely et al., 74 Okla. 23, 176 Pac. 937) was before the court on a former appeal, the lower court sustained defendant's motion to abate the action. This court, through Mr. Commissioner Hooker, held that the lower court was in error in sustaining the motion to abate the action, and that such motion should have been treated as an answer in the case. The syllabus in that case is as follows:

"The record in this case examined, and held that the plea in abatement should be regarded as an answer to the petition, and it was error for the trial court to have rendered a judgment sustaining plea in abatement without giving to the plaintiff an opportunity to plead thereto, as under the record before us it cannot be said that the plaintiff below elected to stand on his demurrer or refused to plead further."

Upon the proposition advanced by defendants, that the question has become moot, they rely on a statement in the opinion in this particular case as follows:

"It cannot be gainsaid that no liability can arise from the wrongful issue of attachment until it has been determined that said attachment was wrongfully procured."

That statement is purely obiter dictum. The statement declares the rule in negative form when applied to a case where damages are set up by way of counterclaim, or offset, or otherwise, in the main action. The remark evidently was based on the language of section 387, C. O. S. 1921, which reads as follows:

"If judgment be rendered in the action for the defendant, the attachment shall be discharged, and the property attached, or its proceeds, shall be returned to him. If the attachment or garnishment shall be discharged on motion prior to final judgment, the defendant may, upon proper supplemental answer, recover his damages, as in other cases for such wrongful attachment or garnishment."

Substantially the same language is used in the case of Scott v. Waples-Painter. Co. et al., 74 Okla. 52, 176 Pac. 754. The language was used in the syllabus of that case, and properly so, for the reason that said section 387 (section 4855, R. L. 1910) was there applied. In that case damages were sought by way of a cross-petition by the defendant in the main action before there had been a discharge or dissolution of the attachment, or rather, garnishment.

A well-known text, Ruling Case Law, vol. 2, p. 902, in treating the subject as to when a cause of action accrues for a wrongful attachment, leaves the matter an unsettled question; that is, no general rule is formulated, but the holdings in many of the various jurisdictions are there enumerated. In this connection the authors state:

"The practice is by no means uniform, for under statutes in some states the attachment defendant is not bound to wait until the attachment suit is determined, but may institute his action at any time, to recover such damages as he has sustained by the wrongful and malicious use of the process of the court. Again there is a conflict as to whether the attachment proceeding must have terminated in a manner favorable to the defendant therein; some cases holding that the plaintiff, in order to recover, must show that such suit was decided in his favor, or that the attachment has been dismissed, dissolved, or abandoned, while others take the contrary view."

If the learned Commissioner and jurist, in using the language quoted in a preceding paragraph, meant that before the cause of action will accrue, that, in all cases, it must be first determined by a judgment of court that the attachment was wrongful, he failed to state the prevailing rule; at all events, the rule could not in justice and reason apply in Oklahoma. The fault or rigor of such an inflexible rule is that it makes no provision for a case or situation: (1) Where the attachment is dismissed or abandoned by the plaintiff before trial or judgment; (2) or in a case where no appeal lies from the order of a justice of the peace in sustaining an attachment, either separately or with the main action, which is the rule in this state; (3) or where the defendant had been given no opportunity

to make a defense in the action; (4) or where, in some jurisdictions, a redelivery bond terminates the attachment proceedings. Analogous to this is the rule of law in this state, that the giving of an appeal bond by the defendant, where an order of attachment is sustained by a justice of the peace, terminates the attachment action.

This court, following the Kansas decisions, has held that there is no appeal from a judgment of a justice of the peace in sustaining an attachment, and, has further held that an ordinary appeal bond filed in the main action automatically discharges the attachment, and that the action terminates then as to the ancillary remedy, the attachment, as the plaintiff can then safely rest upon the security afforded him by the appeal bond. This was the holding of this court in the case of Nation v. Savely, 66 Okla. 229, 168 Pac. 805.

Now that defendant cannot appeal from a judgment sustaining a wrongful attachment issued out of a justice of the peace court, and if it were the law that the defendant or aggrieved party could not maintain an action for wrongful attachment until he gets the attachment first discharged or declared wrongful by a judgment of a court, and there being no court open to him for that purpose or where that issue can be tried out, then the Legislature might as well have inserted a provision in the statute that the law was not intended to extend to a defendant a remedy for a wrongful attachment when issued and sustained by a justice of the peace. Such would be clothing that officer with a power more absolute and all-embracing than is accorded any other judicial civil officer in our government—an officer whose certain decrees are not only final, but when pointed in one direction there could be no remedy to redress a recognized actionable wrong.

In this state the common law governs civil rights and remedies, except in so far as the same has been changed or modified by statutory enactments, or by judicial construction.

We have no express statutes authorizing a recovery for a wrongful attachment except section 387, supra, which statute is not restrictive but cumulative, and sections 342 and 911, which provide for the conditions of an attachment bond. The common law declares that for every injury there is a remedy, and in this state and elsewhere, where the English law obtains as a foundation of jurisprudence, it may be safely said that there are but few, if any, wrongs for

which the law does not provide a remedy. However, in this state there is no necessity for relying upon the broad principles of common law. The Constitution makes ample provision for relief. Section 6, art. 2. The language of the Constitution in this connection is as follows:

"The courts of justice of the state shall be open to every person, and speedy and certain remedy afforded for every wrong and for every injury to person, property or reputation. * * *"

The provision is self-executing.

It would be an anomalous application of the law to say that an injury caused by a wrongful attachment is cured, or at least must be forgotten, in any case, where and when the order of attachment is sustained by a justice of the peace.

There is good reason for a general rule that the attachment proceedings should be terminated in some manner before the defendant can commence an action for damages for wrongful attachment; for the reason that if the action is still pending, the plaintiff therein may show in that action that the attachment was not wrongful, and a judgment may be rendered to that effect, and he should not be called upon to show such fact in the second action until he has had this opportunity of showing it in the first.

It is understood that in such case, if the attachment action is sustained by any court from whose judgment the right of review is recognized in such action or by the Supreme Court, such constitutes an adjudication against the defendant because he has had his day in court upon the question. As already discussed, this is not so as to an attachment sustained by a justice of the peace in Oklahoma; and where the reason for the rule ceases, the rule itself is not to be applied. This is one of the axioms of the law, and was applied in Bump v. Betts (N. Y.) 19 Wend. 421, which was an action for a wrongful attachment, and in principle identical with the present case, and in a jurisdiction apparently requiring a favorable decision in the attachment proceedings or the main action as a condition precedent to maintaining an action for the wrongfulness of the attachment.

Indeed, it would be strange if the plaintiff in this case, or the defendant in the case we have heretofore supposed while discussing this angle of the question, should have no remedy. To conclude otherwise would be, in effect, a denial of due process of law.

There are several other propositions advanced by the parties, especially by the defendants in error, but those questions having been fully settled by former decisions of this court, further discussion is unnecessary.

For the reasons herein stated, that the judgment was irregularly obtained, the judgment and order of the trial court is hereby affirmed.

TEEHEE, JEFFREY, HERR, and DIFFENDAFFER, Commissioners, concur.

By the Court: It is so ordered.

Note.—See 34 C. J. pp. 274, 275, §495; p.365, §580; 15 R. C. L. p. 702; 3 R. C. L. Supp. p. 487.