## McKINNEY v. SWIFT.

No. 17571.   Opinion Filed Oct. 9, 1928.

Rehearing Denied Feb. 19, 1929.

J. B. Dudley, C. T. Huddleston, and Stephenson, Profitt & Stephenson, for plaintiff in error.

Ames, Lowe & Cochran and Whipple & Rosenbloom, for defendant in error.

CLARK, J.   Plaintiff in error was plaintiff below, defendant in error was defendant below; parties will be referred to as plaintiff and defendant.

Plaintiff filed his action in the district court of Okmulgee county, Okla., on the 18th day of September, 1922.   The action was brought to recover on a promissory note in the sum of $1,500, with interest thereon at the rate of 10 per cent. per annum.   On the 23rd day of December, 1922, defendant filed answer in said cause.   On February 9, 1923, plaintiff filed reply.   Plaintiff's action was the usual form of petition asking for the principal sum of $1,500, with interest and attorneys fees.

Defendant's answer, filed December 23, 1922, pleaded as a defense to said note that the amount of the note was to be deducted from an attorney fee due the defendant from plaintiff, when certain litigation was settled, in which the defendant was acting as attorney for the plaintiff, who was guardian of Saber Jackson, with further plea that said action was prematurely brought.

After issues were thus joined, this cause remained on the docket without further action until March 2, 1925, when plaintiff filed a motion asking that said cause be set down for trial at the April term of said court.   On the 21st day of March, 1925, said motion was by the court overruled.   On the 21st day of April, the court made an order striking said case from the docket as not at issue.

On the 21st day of April, 1925, the defendant, by leave of court, withdrew his answer and filed his amended answer and cross-petition in said cause.   The amended answer and cross-petition admitted the execution of the note described in the petition of plaintiff, and as further answer pleaded that the consideration received by defendant from plaintiff for said note was the sum of $1,000, and that $500 was usurious interest.

Defendant further answered that at the time said note was executed, plaintiff was duly appointed and acting guardian of Saber Jackson, appointed as such by the county court of Okfuskee county, probate cause 1313; that the plaintiff, as such guardian, employed the defendant as his attorney to institute, carry on, and prosecute certain

litigations in the courts to recover certain property claimed to belong to plaintiff's ward, Saber Jackson; that the contract of employment was a written one, by the terms of which defendant was to receive a percentage of whatever might be recovered in said litigation; contract was attached to defendant's amended answer and cross-petition, and marked "Exhibit A"; that said contract was approved by the county court of Okfuskee county, and that defendant entered upon his duties as attorney for the plaintiff as such guardian, and carried on and prosecuted certain litigation for the recovery of money and property belonging to and due to plaintiff's ward, Saber Jackson; that said litigation had been finally settled and determined by a certain decree made and entered by the United States Circuit Court of Appeals for the 8th Circuit, at St. Louis, Mo., on the 3rd day of February, 1923, in cause No. 5573, entitled McKinney et al v. Black Panther Oil & Gas Co. et al., 289 F. 1021. That plaintiff, W. E. McKinney, as such guardian, was decreed recovery for plaintiff's ward in the sum of $50,000, all as a result and consequence of defendant's services rendered pursuant to said contract of employment. That the United States District Court of the Eastern District of Oklahoma, upon consideration of the mandate of said Circuit Court of Appeals, and by agreement of all the parties involved in said litigation, ordered payment and satisfaction of said judgment on the 8th day of May, 1923, by the payment to plaintiff, as such guardian, the sum of $10,000 in cash and by delivery to plaintiff, as such guardian, Liberty Bonds of the United States of America in the principal sum of $40,000, which were, on the 8th day of May, 1923, received and accepted by the plaintiff as such guardian. That defendant was entitled to no part of said cash sum of $10,000 by virtue of said contract of employment. That by virtue of said contract of employment, plaintiff, upon receipt of said Liberty Bonds in the principal sum of $40,000, received one-half the same in specie for the use and benefit of this defendant. That on or about the 19th day of June, 1923, said plaintiff, without the authority and consent of the defendant, sold and converted said bonds into cash and appropriated the proceeds thereof to his own use and has at all times refused to deliver the same or any part thereof to the defendant. Defendant, in his answer and cross-petition, says that in carrying on and prosecuting the litigation he advanced and expended at the special instance and request of plaintiff, as such guardian, the sum of $5,000, for which plaintiff promises and becomes liable to pay to this defendant said sum of $5,000.

In his cross-petition defendant pleaded that the note set out in plaintiff's petition on which he seeks to recover the sum of $1,775 as principal and interest, under the Constitution of the state of Oklahoma and laws thereof, is usurious for all sums in excess of $1,000, and by virtue of the statutes in such cases made and provided, said plaintiff forfeits twice the amount of the interest which said note carries, to wit, the sum of $500, and accrued interest on said sum of $1,500 at the rate of 10 per cent. per annum from date of said note, and by virtue of such statutes this defendant pleads a set-off to plaintiff's claim of twice the amount of the entire interest reserved in said note, to wit, the sum of $2,350.

Defendant, in his cross-petition, asks for $20,000 for Liberty Bonds received by plaintiff, together with interest thereon at the rate of six per cent. per annum from June 9, 1923, and $5,000 so advanced to plaintiff and interest thereon at the rate of six per cent. per annum from the 19th day of June, 1923, and $2,350 usurious interest, less whatever sum might be found due plaintiff, and for costs.

On the 29th day of May, 1925, this cause came on for hearing. Default judgment was entered against plaintiff, in the sum of $28,279.09. Thereafter, on the 2nd day of June, 1925, plaintiff filed a motion for new trial and petition to vacate said judgment.

On the 12th day of June, 1925, plaintiff filed an amendment to his original motion for new trial and petition to vacate said judgment, which original motion set out that he had been unavoidably prevented from filing his motion for new trial within three days after the rendition of said judgment and at the same term of court in which the same was rendered. Plaintiff alleged that the cause was originally set down for hearing upon the regular docket of the district court of Okmulgee county, upon the original petition of plaintiff, together with the answer of the defendant, which is a general denial, and thereafter the defendant was permitted to file his amended answer and cross-petition by the court, on the 21st day of April, 1925, and that said cause was stricken from the assignment and the judge of said court informed attorney for plaintiff herein that the cause was a jury case and could not be tried before the fall term of

1925, and the attorney for defendant, by letter, informed plaintiff's attorney that the case had been stricken, and the records of the court show that same was stricken from the regular trial docket. Thereupon, without notice to said plaintiff or his attorney, without the knowledge or consent of the plaintiff or his attorney, said cause was called up by the attorney for the defendant, for trial, and was heard and tried on the 29th day of May, 1925. That the case had never been reset for trial on the docket otherwise, and that no summons was ever issued and served upon plaintiff on defendant's cross-petition.

Plaintiff further alleged that he had no knowledge of the rendition of said judgment or the trial of said cause until about four o'clock Monday evening, June 1, 1925, and that the clerk's office of the district court of Okmulgee county, Okla., closed for business at five o'clock p. m., and that plaintiff and his attorney did not have time to prepare and file a motion on said day before the closing of said clerk's office after the discovery of the rendition of said judgment. Plaintiff and his attorney reside at Okemah, Okla., a distance of 34 or 35 miles from the town of Okmulgee, Okla. That because of the calling of said case to trial when the same was not on the trial docket and the rendition of said judgment at time aforesaid, and in the manner, on the last day of the term of said court on which business could be transacted, the plaintiff has been unavoidably prevented from filing his motion within three days from the rendition of said judgment and during the term at which the same was rendered. That the court erred in the amount of recovery. That defendant was not entitled to recover upon said contract in any amount whatsoever. That the judgment of the court was not sustained by sufficient evidence and is contrary to law. That the cross-petition upon its face and the several pretended causes of action pretended to have been alleged therein are insufficient in law to entitle the defendant to recover against this plaintiff in his individual capacity. That the contract and obligations alleged and set out in the defendant's cross-petition and sued on in said action, if valid and enforceable at all, are valid and enforceable against the plaintiff in his capacity of guardian of Saber Jackson and not against him individually. That said pretended causes of action set out in said cross-petition are not proper set-offs or counterclaims against the plaintiff in this action and cannot be maintained in this action.

Plaintiff further states that at the termination of said rights of Saber Jackson in the Circuit Court of Appeals and the said answer and cross-petition of defendant, the sum of $100,000 was obtained, and that said defendant, George M. Swift, received the full sum of $50,000, and the entire sum which he was to receive under and by virtue of the contract set out in the cross-petition, and the same was duly paid to him, and he knew said facts at the time of the hearing of said cause, and wrongfully, unlawfully, and fraudulently concealed said facts from the court in procuring said judgment rendered in this cause.

Plaintiff further alleged that defendant filed his application with the county court of Okfuskee county, Okla., against the said W. E. McKinney, as guardian of Saber Jackson, asking said court to make allowance and pay the sums alleged to be due and asking said court to make an order directing plaintiff, as guardian, to pay the amount which the said defendant alleged to be due under said cross-petition and contract thereto set up. That the same was duly presented to the county court of Okfuskee county, Okla., and the said county court, after a hearing thereon, denied said application, and that said judgment had become final.

Plaintiff further states that this action had been stricken at the regular setting of the docket by a special order of the court, and this court never made any order setting down said cause for hearing at a special sitting or otherwise, and said cause could not be legally and lawfully heard at the term it was so heard, and judgment rendered.

Plaintiff tendered his duly verified reply to defendant's amended answer, in which he pleaded eight separate defenses to defendant's cross-petition.

Plaintiff's reply to defendant's answer was that he had the original two checks, one in the sum of $1,000 and one for the sum of $500 given to said defendant as a loan represented by the said $1,500 note sued upon in the action by plaintiff.

Plaintiff's answer to defendant's cross-petition pleaded that defendant had filed a claim with the county court of Okfuskee county, in the guardianship matter of Saber Jackson, an incompetent, to allow him an attorney fee in the sum of $25,000 for services and expenses as attorney under and by virtue of said contract mentioned and described in defendant's cross-petition in this action, and that said county court had entered its order and judgment denying said

application and that the same had become final and was not a proper counterclaim or set-off.

Plaintiff further pleaded that defendant, George M. Swift, had received $50,000 in full settlement of his contract, out of the hands of the receiver in said cause, and that plaintiff, as guardian of Saber Jackson, received $50,000 in full settlement, and in addition thereto the said defendant had received the sum of $3,000 and that the said $50,000 was in full and complete settlement for his services under and by virtue of said contract set out in defendant's cross-petition.

Plaintiff further pleaded that long prior to the institution of this action the said George M. Swift assigned an interest in said contract to various parties, one-third interest of which was assigned to M. C. Jones, and at the time of filing said cross-petition M. C. Jones had and held said assignment, and a copy of said assignment was attached and marked "Exhibit E," and made a part of plaintiff's pleadings.

Plaintiff further pleaded that all the funds he received under the litigation of the property of the said Saber Jackson was the sum of $50,000 in money and Liberty Bonds, and he received the same as guardian of said Saber Jackson, incompetent, under and by virtue of an appointment for him as guardian by the county court of Okfuskee county, Okla., and that said plaintiff was under bond to account for and deliver all such property he received to the said Saber Jackson or his successors in office, and in pursuance thereof did turn over and deliver to the said Saber Jackson, under and by virtue of the orders of the county court of Okfuskee county, all the money, funds, and property coming into his hands as said guardian, and same was done long prior to the filing of this cross-petition, and that said cross-petitioner had full knowledge long prior thereto that said plaintiff was no longer guardian of said Saber Jackson and has no money, funds, or property, of any kind or character, belonging to the said Saber Jackson, and that he never had any funds, money, property, or bonds belonging to George M. Swift, the defendant, and expressly denied that he ever converted any property, money, or bonds belonging to the defendant, George M. Swift.

Plaintiff further alleged in his application for a new trial that he had theretofore had the firm of White & Nichols represent him in the guardianship matter of Saber Jackson. That when the amended answer and cross-petition was filed he received it from Logan Stephenson, and left it with the firm of White & Nichols to represent him in the matter. That he later learned that White & Nichols did not understand that said firm should represent him. That he took the papers to Logan Stephenson on or about the 28th or 29th of May, 1925, and employed Stephenson to represent him. That in pursuance of the said employment said Logan Stephenson did, on the 29th of May, 1925, write a letter to the attorneys for the defendant relative to this action. That said letter was received by attorney for defendant on the 30th day of May, 1925, but was never answered. That it was between 7 and 8 o'clock, Monday, June 1, 1925, when the said Logan Stephenson ascertained and knew of the default judgment rendered on the 29th day of May, 1925.

Plaintiff asked that said judgment by default so taken against him on the 29th day of May, 1925, be vacated, set aside and held for naught, and he be permitted to file his answer to the said cross-petition, and that the court set the case down for hearing.

Thereafter, the defendant, George M. Swift, filed his response and answer to the application of plaintiff to vacate and set aside said default judgment. After a hearing thereon, the court, on the 7th day of January, 1926, entered its order and judgment denying said motion for new trial. Plaintiff brings said cause here for review.

Plaintiff in his brief presents the 3rd assignment of error as follows:

"Said court erred in refusing and failing to sustain said motion and petition to vacate said judgment therein described and attached, rendered on the 29th day of May, 1925."

The record discloses that the judgment sought to be vacated was rendered on the 29th day of May, 1925, the last day of the term of district court of Okmulgee county, Okla., for judicial purposes. The 30th day of May, 1925, was Saturday and Decoration Day, and the 31st day of May was Sunday.

Thereafter, on the 2nd day of June, 1925, as soon as plaintiff could do so, he prepared his motion for a new trial, and petition to vacate said judgment, and filed the same.

Plaintiff alleged and states that he had been unavoidably prevented from filing this motion for new trial within three days after the rendition of said judgment and at the term of court in which the same was rendered.

The record further discloses this cause had been stricken from the trial docket, and

plaintiff's attorney had been so informed by the trial judge; the same was not reset for trial except by order of the court on the day said judgment was entered against the plaintiff in favor of the defendant.

Was plaintiff unavoidably prevented from filing his motion for new trial within three days and within the term at which said cause was heard?

The evidence disclosed that neither plaintiff nor his attorney had any notice or knowledge of the trial of said cause until late in the evening of June 1st, after office hours, and too late to prepare and file a motion for new trial. The record further discloses plaintiff acted with due diligence and prepared and filed his motion on the following day.

It is true that one of plaintiff's attorneys, Logan Stephenson, had knowledge of the filing of the cross-petition, but there was a misunderstanding between plaintiff and his attorney Logan Stephenson, and plaintiff and his attorneys White & Nichols; Stephenson thinking that White & Nichols were looking after plaintiff's case, and White & Nichols believing that Logan Stephenson was going to look after it. There is no proof that plaintiff was negligent or failed to give his cause of action proper consideration. The fact that this case had been at issue for a period of nearly two years, and that plaintiff had made an effort to get the same tried, and then defendant was permitted to withdraw his answer and file an answer and counterclaim or set-off, does not indicate that plaintiff was negligent. Plaintiff and his attorney lived at Okemah, and this matter was pending in the court at Okmulgee.

This court, in the case of Gardner et al. v. Blanton et al., 80 Okla. 143, 194 Pac. 1084, in the first paragraph of the syllabus said:

"The phrase 'unavoidably prevented' in section 5035, Rev. Laws 1910, applies both to the days within which a motion must be filed and the term, and the failure to file the motion within the term can be excused by unavoidable casualty, as well as failure to file within three days. The failure to file a motion for a new trial within three days from the rendition of the verdict or decision, or within the term at which the same was rendered, may be excused by showing that the party was unavoidably prevented from so doing."

Under all the facts and circumstances in this case, it would be an injustice and abuse of discretion to deny the plaintiff a right to file his motion for a new trial. The phrase "unavoidably prevented," in section

574, C. O. S. 1921, applies both to the days within which a motion must be filed and the term. Here the plaintiff for two years sought a trial in this cause. This case was at issue and the trial judge had stricken it from the trial docket, permitted the defendant to file an answer and cross-petition, and the trial was had without any notice or without the cause being set for hearing on the docket as provided in sections 579 and 580, C. O. S. 1921. Even had plaintiff's attorneys understood that they were to represent him in this cause, the calling of this case for trial at the time and in the manner in which it was called, in the afternoon of the last day of the term, after the same had been stricken from the trial docket, and without notice to plaintiff or his attorneys, would be an abuse of discretion on the part of the trial court.

This court, in the case of Nation v. Savely, 127 Okla. 117, 260 Pac. 32, in the first paragraph of the syllabus said:

"Sections 579 and 580, C. O. S. 1921, relating to the time and manner of setting cases for trial and publication of the trial docket before the regular session or term of court, are vital provisions for the benefit of litigants; and by virtue of the first clause of the third subdivision of section 810 of the Statutes, where a default judgment has been rendered, the aggrieved person, by a seasonable application, upon showing that these statutes were not complied with, may have the judgment set aside at or after the term after such judgment or order was rendered, unless such aggrieved person had actual notice of the trial in time to appear and defend or prosecute his cause. The second clause of said subdivision of section 810 of the Statutes, which provides for relief against 'an irregularity in obtaining a judgment,' is in its nature a flexible provision addressed to the sound legal discretion of the court—to the trial court primarily, and to this court on review."

In the body of the opinion, at page 119 (page 34, Pacific Reporter), it is said:

"Default judgments rendered in cases where the claims are contested or challenged by pleadings which are not frivolous should be looked upon with considerable suspicion.

"Undoubtedly the lawmakers, in enacting sections 579, 580, and 810, C. O. S. 1921, intended to afford some means of protection to a person against whom a default or 'snap' judgment has been rendered (1) where the provisions of said sections 579 and 580 have not been complied with, unless the person against whom the judgment is rendered, or his attorney, is given actual notice of the proceedings at such a time prior to the trial as will enable him to appear before the

court and protect his rights; (2) or in any case where there has been a substantial irregularity in obtaining the judgment, such as a course of conduct on the part of the person taking the judgment as is calculated to be misleading to the adverse party, or such as would be distinctly inconsiderate of his substantial rights, one of which is the right to his day in court, to be present or represented at the trial.

"The term 'irregularity in obtaining a judgment' has no fixed legal meaning. In every instance the question is one of fact, dependent upon the circumstances of each case. It logically follows that the application of this provision of the statute is addressed to the sound legal discretion of the court, to be exercised in furtherance of justice, on the particular facts of the case. It will be observed that we use the expression 'sound legal discretion,' which negatives arbitrary action or unsound exercise of discretion. In other words, it is an abuse of discretion or reversible error to vacate a judgment where the moving party shows no recognized legal ground therefor. 'On the other hand, if he shows himself plainly and justly entitled to the relief demanded, the court must grant the application, and has no discretion to refuse it.' 34 C. J. 370; Albright v. Warkentin, 31 Kan. 442, 2 Pac. 614; McSpadden v. Richardson, 59 Okla. 124, 157 Pac. 1153; Griffin et al. v. Jones et al., 45 Okla. 305, 147 Pac. 1024; Hodges v. Alexander, 44 Okla. 598, 145 Pac. 809.

"The rule is well stated by the Supreme Court of California in Bailey v. Taaffe, 29 Cal. 423, as follows:

"The discretion intended, however, is not a capricious or arbitrary discretion, but an impartial discretion, guided and controlled in its exercise by fixed legal principles. It is not a mental discretion, to be exercised ex gratia, but a legal discretion, to be exercised in conformity with the spirit of the law, and in a manner to subserve and not to impede or defeat the ends of substantial justice. In a plain case, this discretion has no office to perform, and its exercise is limited to doubtful cases, where an impartial mind hesitates. '

"The rule in different language was stated by the Supreme Court of Washington, in Moody v. Reichow, 38 Wash. 303, 80 Pac. 461, as follows:

" 'Discretion must, however, be exercised for reasonable cause, and upon such grounds as may reasonably happen to a person in the exercise of ordinary diligence in the protection of his rights.' "

It is contended by the defendant in error that the judgment rendered was a default one, and therefore this court was without jurisdiction to review the same upon a motion for new trial filed during the term and within the term, and he cites section 812, C. O. S. 1921; Price & Miller v. Ratliffe et al., 47 Okla. 370, 148 Pac. 153, and Chivers v. Board of Com'rs of Johnston County, 62 Okla. 2, 161 Pac. 822.

We think this section and the cases cited fail to support their contention. The section above referred to reads as follows:

"The proceedings to vacate or modify the judgment or order, on the grounds mentioned in subdivisions four, five, six, seven, eight and nine, of the second preceding section, shall be by petition, verified by affidavit, setting forth the judgment or order, the grounds to vacate or modify it, and the defense to the action, if the party applying was defendant. On such petition, a summons shall issue and be served as in the commencement of an action."

An examination of the subdivisions of the second preceding section, namely, section 810, C. O. S. 1921, discloses that they have no application, and the rule announced in the two above cases is not controlling, because the question involved here was not involved in either of them. Plaintiff sued defendant upon a promissory note, issues were joined, and the case stricken from the assignment. Defendant, by leave of court, filed an amended answer and cross-petition, seeking a judgment against plaintiff. Plaintiff did not plead thereto, and on May 29, 1925, defendant filed a motion for judgment upon his answer and cross-petition, which was sustained on the day it was filed.

The allegations of plaintiff's petition were that defendant owed him $1,500 and interest thereon. This was denied by defendant's answer. This was a question of fact and was at issue by the pleadings on file, and the same should have been set down for trial in the regular and usual manner, and plaintiff given an opportunity to have his day in court.

Plaintiff attached to his motion for a new trial his answer to defendant's cross-petition, which, if true, would be a good defense to defendant's petition. Plaintiff contends that said cross-petition does not state a cause of action. We are not passing on that question at this time, for the reason that, as we view the record, the case must go back for retrial and the plaintiff should be permitted to file such pleadings as he deems right and proper to raise these questions in the court below. We find no traces of design on the part of the defendant to mislead the plaintiff or lull him into a sense of security and thus prevent him from presenting his

case, but the fact that said cause was called for trial after having been stricken from the trial docket, without any notice to the plaintiff that it would be heard on that day, and that a large judgment was taken against plaintiff by defendant without plaintiff having his day in court—in any light in which this matter is considered, it is clear that plaintiff was not negligent, and it was no fault of his that could reasonably have been avoided that gave the defendant this advantage.

The purpose of courts, procedure, and trial is to afford a reasonable, speedy, and adequate remedy for every person that feels aggrieved, and our law should not be so construed as to give one an advantage over the other; all men should stand on equality before the courts of our country and be given an equal opportunity to be heard and defend causes of action in which they are interested. Under the facts in this case, the plaintiff was denied this opportunity, an opportunity which he was legally entitled to. It would be a reproach to this court if it would not lay hold of such a transaction as this is shown to be and set aside a judgment such as was entered herein. It would be a denial of a right to be heard and contrary to our organic law. Judgment of the trial court is therefore reversed, with directions to set aside the judgment so entered and permit plaintiff to plead to defendant's answer and cross-petition.

MASON, V. C. J., and HARRISON, PHELPS, LESTER, HUNT, and RILEY, JJ., concur.

Note.—See under (1) 29 Cyc. p. 958. (2) 4 C. J. pp. 840, 841, §2825; 34 C. J. p. 300, §518: p. 429, §677. See "Judgments," 34 C. J. §495, p. 275, n. 83; §677, p. 429, n. 79. "New Trial,' '46 C. J. §271, p. 300, n. 28.