In the Matter of Melinda REYNA, a female child under the age of 18 years.

In the Matter of Natasha REYNA, a female child under the age of 18 years.

Ginette FREY, Appellant,

v.

DEPARTMENT OF INSTITUTIONS, SOCIAL AND REHABILITATIVE SERVICES, State of Oklahoma, et al., Appellees.

Nos. 48163, 48164.

Supreme Court of Oklahoma.

Feb. 17, 1976.

C. William Stratton, Lawton, for appellant.

Thomas W. Wisener, Lawton, Don W. Beauchamp, Lawton, Larry Derryberry, Atty. Gen., Oklahoma City, for appellees.

HODGES, Vice Chief Justice.

This action arose as the result of the Department of Institutions, Social and Rehabilitative Services of the State of Oklahoma (DISRS) filing a petition seeking to have two minor children declared dependent and neglected. The district court was asked to declare the children wards of the court and to make such provisions as it deemed proper for their welfare. This hearing was necessary because Paul Reyna, the natural father of Melinda Reyna and the adoptive father of Natasha Reyna, had killed the natural mother of the children.

He was incarcerated in the Comanche County jail at the time of the hearing. He was subsequently convicted of manslaughter and received a five year prison sentence.

The mother of the children was a French citizen. The children, therefore, have dual citizenship in France and the United States. The mother's sister, Ginette Frey, a French resident, and the father's half-sister and her husband, Mr. and Mrs. Joe Lopez, Texas residents, each sought custody of the children.

The evidence revealed the maternal aunt, her daughter and the children's grandmother were most anxious to care for the children and were vitally interested in their welfare. Close family ties had been maintained despite the distance of separation. Regular correspondence was maintained and familial affection preserved.

The cognate aunt is well able to provide for the children's mental, moral and temporal welfare. The Freys live in a three bedroom apartment with a yard which is provided rent free as a part of her husband's compensation. She also owns a home in the country with a big garden where the children can spend their holidays. The Freys have a comfortable income and have the means to rear and educate the children. The other aunts and uncles of the children in France are also willing to help provide for the children should it become necessary.

It was also revealed that the children would continue to speak and learn English if they were sent to France since the aunt did part-time work for an English professor who had agreed to assist in this part of their education. English is also taught in the French schools.

The maternal aunt also pledged herself to continue to encourage and assist in the children's religious upbringing.

Comte Reginald De Warren, an official of the French government, testified as to the special advantages the children would receive if they were placed in a French

home by the court: free education to the Ph.D. level; a monetary family and orphan's allocation of approximately $150.00 per month for each child; and free medical and hospitalization care.

In contrast, the evidence was clear that the only relationship Natasha has to the Lopez family is that she was adopted by Paul Reyna, the brother of Mrs. Lopez. Prior to the death of the mother of the children the Lopezs had not ever seen them. However, Natasha had visited her relatives in France, and had learned to speak some of the language.

All the appellees agreed it was in the best interest of the children that they not be separated.

After hearing the evidence, which included the DISRS report which revealed Natasha had negative feelings toward her adoptive father, the court found it was in her best interest to be placed with her relatives in France. However, the court found it did not have the authority to place custody outside the continental limits of the United States. No finding was made as to the best interest of Melinda.

The court placed temporary custody of the children with Mr. and Mrs. Lopez under the general supervision of the Oklahoma DISRS with courtesy supervision of the Texas State Department of Welfare. It was ordered by the court that at such time as Paul Reyna is released from prison, he was to be given a reasonable time to arrive at some method of supporting the children. It was also ordered in the event he made any request for their custody, this was to be called to the attention of the court within three months from the date of his release.

The question which is determinative of the appeal is whether the court erred in finding it did not have the authority to award custody of the children to a French resident.

The statutes concerning dependent and neglected children are to be liberally construed to the effect that the care, custody, and discipline of the children shall approximate, as nearly as possible, that which should have been given by the parents. 10 O.S. 1971, § 1129.

■ The court has the authority at a dispositional hearing to place the child under supervision in his own home, "or *in the custody of a suitable person elsewhere* upon such conditions as the court shall determine."

There is no statutory restriction on placing a child in the custody of a person who is a citizen of and resides in a foreign country.

■ Generally, a ward should be retained within the power of the court, unless it appears the interests of the child would be best served by removal. *Mattox v. Mattox,* 129 Okla. 301, 264 P. 898 (1928). In awarding custody of dependent or neglected children, the court is to be guided by what appears to be for the best interest of the children in respect to their temporal, mental, and moral welfare. *In Re Vilas,* 475 P.2d 615 (Okla.1970).

■ The fact the children will live abroad is not controlling. If the trial court, based on sufficient evidence, concludes the best interest of the children will be promoted by removal to a foreign country, either permanently or temporarily, removal is proper. *Donnally v. Blankenstein,* 167 Cal.App.2d 282, 334 P.2d 260, 263 (1969); *Gantner v. Gantner,* 39 Cal.2d 272, 246 P.2d 923 (1959).

■ Courts have the power in exceptional cases to permit children to be taken to a foreign country when the court believes it will be conducive to the best interest of the children. See *Wilson v. Mitchell,* 48 Colo. 454, 111 P. 21 (1910); *Edwards v. Edwards,* 191 Ore. 275, 227 P.2d 975 (1951); *Lane v. Lane,* 186 S.W.2d 47 (Mo.App.1945). This may be especially so where the child holds dual citizenship.

■ The court stated even though it felt is was in her best interest, if it placed Na-

tasha with relatives in France it would in effect be terminating the parental rights of the father. This is not so.

The father in this case is no more deprived of parental rights than a father in a divorce action where the child is permitted to reside outside the country. This has been allowed in numerous cases. See *Miracle v. Miracle*, 360 P.2d 712 (Okla.1961); and 15 A.L.R.2d 432 for compilation of cases.

There was no finding or judgment entered by the trial court as to which custodian would best serve Melinda's interest regarding her mental, moral, and temporal welfare.

In a case of equitable cognizance, the Supreme Court may weigh the evidence and enter such judgment as the trial court should have rendered. *Craig v. Collins*, 285 P.2d 859, 861 (Okla.1955). After having weighed the evidence, and in view of the agreement of the parties that the children should not be separated, we find the trial court should have entered an order finding the best interest of Melinda, as well as Natasha, would be best served by granting custody to the cognate aunt. While we believe the Lopezs are fit and respected persons to have custody of the children, we believe their resources and familial ties are less than that of the maternal aunt.

In view of the trial court's finding that the best interest of Natasha would be served by awarding her custody to the appellant, and of the finding by this court that Melinda's best interest would also be best served, and in the absence of any statutory restrictions, we find that the custody of the children should be placed in Ginette Frey, the appellant.

Reversed.

WILLIAMS, C. J., and DAVISON, IRWIN, BARNES, SIMMS and DOOLIN, JJ., concurring.