CHARLES SANDERS HOMES v. COOK & ASSOCIATES



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:CHARLES SANDERS HOMES v. COOK & ASSOCIATES

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 CHARLES SANDERS HOMES v. COOK & ASSOCIATES
2020 OK CIV APP 14
465 P.3d 1278
Case Number: 115458
Decided: 05/14/2020
Mandate Issued: 06/17/2020
ON II
THE COURT OF APPEALS OF THE STATE OF OKLAHOMA, DIVISION II
Cite as: 2020 OK CIV APP 14, 465 P.3d 1278

 

CHARLES SANDERS HOMES, INC., Plaintiff/Appellee,
v.
COOK & ASSOCIATES ENGINEERING, INC. and JUSTIN COOK, Defendants/Appellants.

APPEAL FROM THE DISTRICT COURT OF
TULSA COUNTY, OKLAHOMA

HONORABLE DANA KUEHN, TRIAL JUDGE

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS

Scott R. Eudey, Melinda A. Aycock, ROSS & EUDEY, PLLP, Broken Arrow, Oklahoma, for Plaintiff/Appellee

Lawrence D. Taylor, Tulsa, Oklahoma, for Defendants/Appellants

JANE P. WISEMAN, PRESIDING JUDGE:

¶1 Cook & Associates Engineering, Inc., and Justin Cook appeal the denial of their motions to vacate certain deficiency orders in this mortgage foreclosure action.[1] The Cooks filed their motions pursuant to 12 O.S.2011 § 1031(3), arguing that the trial court's failure to use the property's appraised value, rather than the price paid at the sheriff's sale, for determining the fair market value of the property and the amount of their deficiency is an "irregularity" justifying vacation of the deficiency orders. We hold that using the price paid at the sheriff's sale as the property's fair market value to determine the amount of the Cooks' deficiency was improper, requiring us to vacate the orders and remand for further proceedings.

BACKGROUND

¶2 Charles Sanders Homes, Inc. (Homes) sold commercial property to Cook & Associates in 2006. In partial satisfaction of the purchase price, Cook & Associates and Justin Cook signed a promissory note secured by a real estate mortgage on the property. When the note was in default, Homes sued to collect the balance due and to foreclose its mortgage on February 12, 2012. Both Cook & Associates and Justin Cook were served with the petition on March 9, 2012, but chose not to defend the action. Believing that their equity in the property was in excess of $30,000, neither defendant appeared, "desiring instead for the case to proceed to judgment and sheriff's sale quickly and without unnecessary expense."

¶3 On May 17, 2012, Homes was granted a default judgment against both defendants in the amount of $279,769.78. Neither defendant appealed, and that judgment is final. See Funk v. Payne, 1938 OK 270, ¶ 2, 82 P.2d 976 (in order to assert errors in a judgment of foreclosure, it is necessary to appeal from that judgment); see also First Nat'l Bank of Tulsa v. Colonial Trust Co., 1917 OK 360, ¶ 3, 167 P. 985 (a judgment of foreclosure is final if not appealed). The facts of Cook & Associates' and Justin Cook's liability to Homes and the amount of that liability, subject to credit for the fair market value of the property, have been determined and are not challenged in this appeal.

¶4 After entry of the May 2012 judgment, the property was ordered sold at sheriff's sale. Three appraisers, appointed as required by law, appraised the value of the property at $279,000. The Cooks did not appear at the sheriff's sale or submit a bid. The property was sold to Homes, the only bidder at the sheriff's sale, for $186,000, an amount equal to exactly two-thirds of the appraised value. The trial court's order confirming the sheriff's sale was filed on August 28, 2012, and not appealed. The Cooks have not challenged the order confirming the sheriff's sale in this appeal.

¶5 Pursuant to a motion for deficiency, the case was then set for hearing to determine the amount, if any, of the deficiency for which the Cooks would be liable. Neither defendant appeared at the hearing, and a default deficiency order against Cook & Associates was filed on October 30, 2012, in the amount of $93,769.78, the difference between the $186,000 sale price and the amount of Homes' judgment. A default deficiency order against Justin Cook for the same amount was filed on February 6, 2013. This appeal concerns the trial court's denial of subsequent motions filed by Cook & Associates and Justin Cook to vacate those deficiency orders.

STANDARD OF REVIEW

¶6 A motion to vacate a judgment "is addressed to the sound legal discretion of the trial court and the order made thereon will not be disturbed on appeal unless it clearly appears that the trial court has abused its discretion." Hassell v. Texaco, Inc., 1962 OK 136, ¶ 14, 372 P.2d 233. An abuse of discretion standard of review includes examination of both fact and law issues and an "abuse occurs when the ruling being reviewed is based on an erroneous legal conclusion or there is no rational basis in the evidence for the decision." Tibbetts v. Sight 'n Sound Appliance Ctrs., Inc., 2003 OK 72, ¶ 3, 77 P.3d 1042.

ANALYSIS

¶7 This is the Cooks' second appeal challenging the deficiency orders. In the first appeal, we addressed a motion to vacate the October 30, 2012 deficiency order that Cook & Associates filed on June 18, 2013. In its motion, filed pursuant to 12 O.S.2011 § 1031(3), Cook & Associates claimed there had been an "irregularity in obtaining a judgment or order." It argued that the irregularity resulted from the trial court's use of the $186,000 sheriff's sale price rather than the $279,000 appraised value in determining the amount of the deficiency Cook & Associates would be liable for after the sale. It asserted that the only evidence from which the trial court could have determined the "fair and reasonable market value" of the property, as required by 12 O.S.2011 § 686, was the appraised value reflected on the return filed by the appraisers. The trial court denied Cook & Associates' motion in a "minute order" filed on July 26, 2013. We dismissed Cook & Associates' appeal of that ruling for lack of a final appealable order. Charles Sanders Homes, Inc. v. Cook and Assocs. Eng'g, Inc., 2016 OK CIV APP 45, ¶ 12, 376 P.3d 945.

¶8 On September 23, 2016, the trial court entered a "Journal Entry of Final Order" denying Cook & Associates' June 18, 2013 motion to vacate the October 30, 2012 deficiency order. Cook & Associates' petition in error in this appeal was timely filed to obtain appellate review of the September 2016 order.

¶9 On February 3, 2016, Justin Cook filed a motion to vacate the February 6, 2013 deficiency order. The trial court denied that motion in a "Journal Entry of Final Judgment" filed on September 23, 2016. Justin Cook's petition in error in this appeal was timely filed to obtain appellate review of that order.

¶10 In the first appeal involving these parties and their challenge to the deficiency orders, we also reviewed a motion to vacate filed by Cook & Associates and Justin Cook on September 11, 2013. That motion was directed at both the October 30, 2012 deficiency order against Cook & Associates and the February 6, 2013 deficiency order against Justin Cook. They cited 12 O.S.2011 § 1038 in their motion and claimed the deficiency orders were facially void because the notice of the deficiency hearings was constitutionally defective in that it did not state that a number other than the appraised value could be used as the fair market value of the property to determine the amount of their deficiency liability. The trial court denied that motion in a "Journal Entry of Final Order" filed on January 22, 2014. We held that the notice was not defective and affirmed the denial of the motion to vacate. "The district court's January 22, 2014 Final Order denying the Cooks' September 11, 2013 motion to vacate is affirmed." Charles Sanders Homes, 2016 OK CIV APP 45, ¶ 19.

¶11 In this second appeal, we address two different motions to vacate, Cook & Associates' June 18, 2013 motion to vacate the October 30, 2012 deficiency order and Justin Cook's February 3, 2016 motion to vacate the February 6, 2013 deficiency order. Both motions cite 12 O.S.2011 § 1031(3) as authority. Section 1031(3) provides that a judgment or final order may be vacated: "For mistake, neglect, or omission of the clerk or irregularity in obtaining a judgment or order." The Cooks assert that the "irregularity" in obtaining the judgment resulted from basing the amount of the deficiency on the price for which the property sold at the sheriff's sale rather than the appraised value of the property. In the first appeal, we did "not address the argument that the district court erred in using the sheriff's sale price rather than the appraised value of the property when determining the Cooks' deficiency liability." Charles Sanders Homes, 2016 OK CIV APP 45, ¶ 23. As a result, the current appeal is not barred by the settled-law-of-the-case doctrine. See Panama Processes, S.A. v. Cities Serv. Co., 1990 OK 66, n. 27, 796 P.2d 276 (explaining that the "'settled-law-of-the-case' doctrine operates to bar relitigation of issues that have been settled by an earlier appellate opinion in that case").

¶12 As distinguished from the claim preclusion doctrine, which bars relitigation of all claims that were or could have been raised, the settled-law-of-the-case doctrine "operates to bar relitigation of only those issues that have been settled by an appellate opinion." Mobbs v. City of Lehigh, 1982 OK 149, n. 5, 655 P.2d 547. "To properly apply the law of the case doctrine the appellate court in the second appeal must decide exactly what the first appellate decision determined expressly or impliedly." Tibbetts v. Sight 'n Sound Appliance Ctrs., Inc., 2003 OK 72, ¶ 10, 77 P.3d 1042 (citing Shoemaker v. Estate of Freeman, 1998 OK 17, ¶ 15, 967 P.2d 871). As a result, successive motions to vacate would not be prohibited if they are filed within the time permitted by 12 O.S.2011 § 1038 and raise issues not previously decided by an appellate opinion. See Joe Walsh Adver., Inc. v. Phillips Tire & Supply Co., 1972 OK 90, 498 P.2d 1391 (holding that a petition to vacate default judgment, relying on the same grounds as a previous motion to vacate, was barred by the doctrine of res judicata as ruling on prior motion was not timely appealed and became final adjudication of the issue); cf. Salyer v. Nat'l Trailer Convoy, Inc., 1986 OK 70, 727 P.2d 1361 (regarding successive motions to vacate) and Yery v. Yery, 1981 OK 46, 629 P.2d 357 (regarding a motion to vacate).

¶13 The motions to vacate at issue in this appeal are based on a separate ground which the previous appeal did not decide. Both motions were filed within the three-year span set by 12 O.S.2011 § 1038: "Proceedings for the causes mentioned in paragraphs 3 and 6 of Section 1031 of this title, shall be within three (3) years."

¶14 We are therefore confronted with the question of whether any irregularity occurred in the manner in which the amount of the Cooks' deficiency was determined which would subject the deficiency orders to the trial court's exercise of discretion in deciding whether to vacate them.

The term "irregularity in obtaining a judgment" has no fixed legal meaning. In every instance the question is one of fact, dependent upon the circumstances of each case. It logically follows that the application of this provision of the statute is addressed to the sound legal discretion of the court, to be exercised in furtherance of justice, on the particular facts of the case. It will be observed that we use the expression "sound legal discretion," which negatives arbitrary action or unsound exercise of discretion. In other words, it is an abuse of discretion or reversible error to vacate a judgment where the moving party shows no recognized legal ground therefor.

"On the other hand, if he shows himself plainly and justly entitled to the relief demanded, the court must grant the application, and has no discretion to refuse it."

Nation v. Savely, 1927 OK 350, ¶ 9, 260 P. 32 (citations omitted).

¶15 To show a § 1031(3) irregularity, the Cooks must show that the trial court failed to follow the procedure applicable to deficiency orders in foreclosure cases and the refusal to correct this failure, being based on an erroneous legal conclusion or without rational basis in the evidence, was an abuse of discretion. The Cooks argue that Oklahoma's anti-deficiency statute, 12 O.S.2011 § 686, requires the trial court to use the fair market value of the property on the date of sale in determining the amount of the deficiency, if any, when it addresses a motion for deficiency order pursuant to this section. The Cooks take issue with the trial court's use of the sale price--$186,000 which represents exactly two-thirds of the fair market value set by the three sheriff's appraisers--in determining the amount of the deficiency. The only evidence of fair market value before the court, according to the Cooks, was the appraised value of $279,000 submitted by the appraisers.[2]

¶16 The question presented generates a closer examination of the applicable part of 12 O.S.2011 § 686, the anti-deficiency statute:

Upon such [deficiency] motion the court, whether or not the respondent appears, shall determine, upon affidavit or otherwise as it shall direct, the fair and reasonable market value of the mortgaged premises as of the date of sale or such nearest earlier date as there shall have been any market value thereof and shall enter a post-judgment deficiency order. Such post-judgment deficiency order shall be for an amount equal to the sum of the amount owing by the party liable as determined by the order with interest, plus costs and disbursements of the action plus the amount owing on all prior liens and encumbrances with interest, less the market value as determined by the court or the sale price of the property whichever shall be the higher.

(Emphasis added.) The statute draws a clear distinction between "market value" and "sale price." They are not synonymous, or there would be no need to dictate a statutory rule of choice between them in ascertaining whether a deficiency exists. In the absence of the rare occasion when the market value and the sale price coincide, the statute directs using the higher of the two in judicially determining the deficiency question arising from a mortgage foreclosure.

¶17 "By fair market value is meant the amount of money which a purchaser willing but not obliged to buy the property would pay to an owner willing but not obliged to sell it . . . ." City of Tulsa v. Creekmore, 1934 OK 57, ¶ 0, 29 P.2d 101 (syl. no. 2 by the Court). Although the sheriff conducts the sale of the mortgaged premises, he is not the owner of the property. It is, in fact, the Cooks who own the property, and they cannot be said to be under no obligation to sell. A forced sale price should not be taken as the conclusive measure of fair market value as it lacks the black-letter requirements of a willing seller and a free decision whether and when to sell. And one could rationally argue that a sheriff's sale is not an open market sale, occurring as it does pursuant only to court order outside normal domestic real estate sales.

¶18 This is a forced sale pursuant to a decree of foreclosure, and the Cooks are entitled to the full protection of § 686. Although not impossible, it is a rare occurrence when a sheriff's sale brings the fair market value of a property. As noted in Founders Bank and Trust Co. v. Upsher, 1992 OK 35, n. 23, 830 P.2d 1355, "a forced sale seldom brings a property's fair market value." See also Eufaula Bank & Trust Co. v. Wheatley, 1983 OK CIV APP 21, 663 P.2d 393.[3] This makes adherence to § 686 all the more imperative because the statute draws a marked distinction between a forced sales price and fair market value. According to § 686, the deficiency is determined by subtracting "the market value as determined by the court or the sale price of the property whichever shall be the higher" from the amount owed according to the judgment.

¶19 As mandated by § 686, the trial court, whether the owner appears or not, must ascertain, "upon affidavit or otherwise as it shall direct, the fair and reasonable market value of the mortgaged premises as of the date of sale" in determining the question of any deficiency.[4] The Cooks are not required to present evidence of fair market value--the trial court shoulders the statutory duty to determine that value and may direct the party seeking the deficiency to present such evidence, not just the sale price, particularly in situations like this where the appraisers' determination of the property's "real value"[5] closely approximates the judgment amount in the foreclosure decree and the only actual evidence of fair market value is not the sale price, but the appraisal amount of $279,000.

¶20 At the time of the deficiency hearing, the trial court had no evidence of fair market value as of the time of sale other than the appraisal of $279,000. The price realized at sheriff's sale resulting from Homes' bid was strictly according to 12 O.S.2011 § 762: "[N]o [] property shall be sold for less than two-thirds (2/3) of the value returned in the [appraisement] . . . ." Id.[6] Without any other evidence on which to base fair market value, the statutory minimum bid--to meet confirmation standards--of 2/3 of the property's market value, as legally declared by the court, cannot with the stroke of a judicial pen then become the actual market value.

¶21 Lenders are not unaware of the legislative intent behind § 686. The Supreme Court in Founders Bank and Trust Co. v. Upsher, 1992 OK 35, n. 23, 830 P.2d 1355, has noted:

Lenders frequently confront potential losses upon application of the anti-deficiency statute. This is so because a forced sale seldom brings a property's fair market value. The predictable built-in loss is the difference between the fair market value of the property and the foreclosure sale proceeds. For this reason, lenders often are compelled to protect a loan's soundness by obtaining a guaranty for at least that portion of the indebtedness which would be lost by application of the anti-deficiency proceedings.

¶22 Another division of this Court provided guidance in Little Bear Resources, LLC v. Nemaha Services, Inc., 2011 OK CIV APP 18, 249 P.3d 957, with facts indistinguishable from those in this case. In Little Bear, the Court reversed the trial court's application of the $107,000 purchase price at the sheriff's sale (the required minimum 2/3 bid) as credit against Little Bear's judgment amount, and following the mandate of § 686, directed the application of the full appraised value of the property ($160,000) as credit against the judgment in determining the deficiency. As the Court reasoned, the equitable principles of § 686 should "allow a debtor to receive full credit for the value actually received by the creditor--the fair market value of the property (or the sales price if it is higher)." Id. ¶ 11. The Little Bear Court succinctly stated:

Where there has been a sheriff's sale of property and the creditor (here, Little Bear) purchases the property at the sale, the value accruing to creditor is not merely the amount of its bid. Little Bear received property of a certain value (here, $160,000), which is well in excess of its successful bid of $107,000. The value received by Little Bear exceeds the amount credited to its judgment against Nemaha, yielding an inequitable result. In order to adequately protect both Little Bear and Nemaha, the full appraised value of the property ($160,000) should have been credited against Little Bear's judgment.

Id. ¶ 13.

¶23 We should do no less in this case. The trial court here failed to follow § 686's mandated procedure for deficiency orders and therefore should have vacated them.

CONCLUSION

¶24 The trial court's orders denying the Cooks' motions to vacate are reversed, the deficiency orders are vacated, and the case is remanded for a hearing to determine the fair market value pursuant to § 686 in accordance with this Opinion before determining whether any deficiency is owed.

¶25 REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.

THORNBRUGH, C.J., concurs, and FISCHER, J., dissents.

FOOTNOTES

[1] The determination of a deficiency in a mortgage foreclosure proceeding does not result in a judgment. See generally Mehojah v. Moore, 1987 OK CIV APP 43, 744 P.2d 222 (approved for publication by the Supreme Court); see also Neil Acquisition, L.L.C. v. Wingrod Inv. Corp., 1996 OK 125 n. 6, 932 P.2d 1100. Although often referred to as a judgment by custom and practice, it is "a post-judgment deficiency order." 12 O.S.2011 § 686.

[2] Although Homes would like to denigrate the Sheriff's appraisers' value as a "drive by appraisal," there is no evidence to support that characterization. And, although the Dissent takes issue with the appraisers' "estimated value" and the lack of evidence of their qualifications, they were appointed by the Sheriff and were willing to lend their names under oath to their appraisal. This cannot be said of the unknown bidding agent for Homes and his or her qualifications, training or expertise in valuing such property, based as it was solely on the minimum 2/3 required by 12 O.S.2011 § 762.

[3] The Court noted that it found no "authority that the value of the property realized at the forced sale in Alabama automatically establishes the fair and reasonable market value for this debt action in Oklahoma." Eufaula Bank & Trust Co., 1983 OK CIV APP 21, ¶ 12.

[4] Although the Dissent maintains that our Opinion requires the district court to use the appraisers' value, this is clearly not our holding, as we have just stated, and as shown by our remand for a determination of the property's "fair and reasonable market value" as mandated in § 686.

[5] By state law, the three disinterested sheriff's appraisers are oath-bound to actually view the property, impartially appraise its "real value," and file their signed return so stating. 12 O.S.2011 § 759(B)(We note that this statute was amended in 2019 but these requirements remain).

[6] If Homes and the Dissent are correct--that the $186,000 bid is the fair market value--we would be hard-pressed to say an almost identical bid but a dollar less ($185,999) is not equally defensible as the fair market value, though it could not be accepted as such based on 12 O.S.2011 § 762.

FISCHER, J., dissenting:

¶1 Because of the issues decided in a previous appeal and because Cook and Associates and Justin Cook (the Cooks) failed to preserve other issues for appellate review, the only issue in this appeal is whether the district court's use of the price paid at the sheriff's sale to determine the fair market value of the property, rather than the property's estimated value, is an "irregularity" justifying vacation of the deficiency orders pursuant to 12 O.S.2011 § 1031(3).[1] In my view, that was not an "irregularity" as that term is defined in section 1031(3). I would affirm the orders appealed and, therefore, respectfully dissent.

¶2 The procedural history of this litigation is set out in the Majority Opinion and shows that this appeal concerns the denial of a motion to vacate. The Cooks did not appeal the foreclosure judgment or any of the final orders in this mortgage foreclosure case. Most importantly, they did not appear at or introduce any evidence during the hearing on the motion to determine their deficiency nor did they appeal the amount owed set out in the deficiency orders. They cannot do so now.

This Court has previously held that under [section 1031(3)], the correctness of an amount of a judgment under the evidence before the court is contestable as a direct appeal from the judgment, but that issue is not presented on the occasion of a motion to vacate the judgment, nor an appeal therefrom.

Yery v. Yery, 1981 OK 46, ¶ 14, 629 P.2d 357. Errors regarding findings of fact necessary to a judgment "do not constitute irregularities, and are not grounds for vacation of a judgment under 12 O.S.[2011] § 1031." Cunningham v. Cunningham, 1977 OK 203, ¶ 21, 571 P.2d 839. "In appeals lodged from an adverse order entered in a postjudgment vacation proceeding, errors which may be reviewed are confined to those in granting or denying relief sought upon the grounds advanced and the evidence presented." Stites v. Duit Constr. Co., Inc., 1995 OK 69, ¶ 25, 903 P.2d 293 (original emphasis and footnote omitted).

¶3 Consequently, the Cooks are limited in this appeal to showing the kind of "irregularity" with which section 1031(3) is concerned, that is, some irregularity in the denial of their motions to vacate the deficiency orders.

The term "irregularity in obtaining a judgment" has no fixed legal meaning. In every instance the question is one of fact, dependent upon the circumstances of each case. It logically follows that the application of this provision of the statute is addressed to the sound legal discretion of the court, to be exercised in furtherance of justice, on the particular facts of the case.

Edge v. Sec. Bldg. & Loan Ass'n, 1935 OK 385, ¶ 7, 45 P.2d 1108 (quoting Nation v. Savely, 1927 OK 350, ¶ 9, 260 P. 32). "'In a plain case, this discretion has no office to perform, and its exercise is limited to doubtful cases, where an impartial mind hesitates.'" Nation v. Savely, 1927 OK 350, ¶ 10 (quoting with approval Bailey v. Taaffe, 29 Cal. 422 (1866)). This is not a "doubtful" case.

¶4 To show the type of irregularity with which section 1031(3) is concerned, the Cooks must show that the district court failed to follow "the established rules or mode of procedure" applicable to deficiency proceedings conducted pursuant to section 686. Knell v. Burnes, 1982 OK 35, ¶ 5, 645 P.2d 471.[2] Those rules and procedures are derived from several statutes scattered through chapters 12 and 13 of Title 12. Before the sheriff can sell the property, he must appoint three disinterested and impartial individuals who actually view the property and then file a signed affidavit of their "estimate of the real value of the property." 12 O.S.2011 § 759(B). The sheriff must then give notice of the sale. 12 O.S.2011 § 764. At the sale, the sheriff can sell the property for two-thirds of the appraisers' estimated value or any higher amount. 12 O.S.2011 § 762. Only after the property is sold can the district court determine the amount of any deficiency owed by the defendant. 12 O.S.2011 § 686; Neil Acquisition, L.L.C. v. Wingrod Inv. Corp., 1996 OK 125, ¶ 8, 932 P.2d 1100.

¶5 The Cooks argue that section 686, Oklahoma's "anti-deficiency statute,"[3] requires the district court to use the three appraisers' estimated value of the property reported during the sheriff's sale, which the Cooks refer to as the "appraised value," when the court determines the amount of their deficiency. In my view, there is no such requirement in section 686.

Upon such motion the court, whether or not the respondent appears, shall determine, upon affidavit or otherwise as it shall direct, the fair and reasonable market value of the mortgaged premises as of the date of sale . . . and shall enter a post-judgment deficiency order . . . for an amount equal to the sum of the amount owing by the party liable . . . less the market value as determined by the court or the sale price of the property whichever shall be the higher.

12 O.S.2011 § 686 (emphasis added). To determine the meaning of "market value" we first look to the "plain and ordinary meaning" of the term. Lumber 2, Inc. v. Illinois Tool Works, Inc., 2011 OK 74, ¶ 8, 261 P.3d 1143. According to the plain language of the statute, the district court is required to determine and then use the higher of the sales price or "the fair and reasonable market value."[4]

¶6 If the Cooks were correct, the Legislature could have simply provided that the deficiency would be determined by the difference between the amount owed and the appraisers' estimated value reported during the sheriff's sale. It did not. The term "appraised value" is not mentioned in section 686. And, there is no reference to the appraisers' "estimate of the real value" in the statute. Legislative omission is evidence that a statute was not intended to reach the matter omitted. McSorley v. Hertz Corp., 1994 OK 120, ¶ 19, 885 P.2d 1343. And, it is presumed that the Legislature intends what it expresses. Oklahoma Ass'n for Equitable Taxation v. City of Oklahoma City, 1995 OK 62, ¶ 5, 901 P.2d 800. Finally, "the general rule is that nothing may be read into a statute which was not within the manifest intention of the legislature as gathered from the language of the act." Stemmons, Inc. v. Universal C.I.T. Credit Corp., 1956 OK 221, ¶ 19, 301 P.2d 212. Based on traditional rules of statutory construction, the district court is not required to use the appraisers' estimated value when determining the property's market value.

¶7 Further, section 686 deals with a proceeding that is separate from and has a different purpose than the sheriff's sale. "A foreclosure decree authorizes merely the sale of the specific land that is mortgaged." Neil Acquisition, L.L.C. v. Wingrod Inv. Corp., 1996 OK 125, ¶ 7, 932 P.2d 1100. The sheriff's sale does not recover an amount of money nor will it support a general execution for any deficiency owed by the judgment creditor. Id. On the other hand, section 686 authorizes the court to determine the market value of the property on the date of the sheriff's sale and to enter a "post-judgment deficiency order" if the proceeds of that sale are insufficient to satisfy the personal judgment previously entered in the foreclosure action. 12 O.S.2011 § 686.

¶8 Because section 686 makes no reference to the "appraised value" used during the sheriff's sale, Oklahoma's anti-deficiency statute requires the district court to make a determination of the value of the property that is independent of the previous valuation. Neil Acquisition, 1996 OK 125, ¶ 9 (section 686 mandates a hearing and a determination of any deficiency in accordance with the statutory formula). In this regard, my view and the view of the Majority are the same.

¶9 However, the Majority and I do not agree that the district court was required to use the appraisers' estimated value in this case which, according to the Majority, was "the only actual evidence of fair market value". If that were the case, there would be no need for a hearing or the district court's involvement. The deficiency would simply be determined by a mathematical calculation. See Neil Acquisition, 1996 OK 125, n.12 (noting that section 686 replaced the "automatic" common law method of subtracting the sheriff's sale price from the amount owed to determine the deficiency). Section 686 "requires a judicial determination of a deficiency . . . ." Id. The court's determination of the market value may or may not agree with the appraisers' previous valuation. But, and by necessity, the court's determination can only be based on the evidence presented during the section 686 hearing. "An adjudication of an issue of fact by the trial court must be based upon evidence that supports the decision . . . ." Christian v. Gray, 2003 OK 10, ¶ 44, 65 P.3d 591. "[A] trial court commits an abuse of discretion when it decides an issue based upon a fact not of record." Id. ¶ 52.

¶10 According to the Cooks and the Majority, the district court "had no evidence of fair market value as of the time of sale other than the appraisal of $279,000." I respectfully disagree.

¶11 At the section 686 hearing, the record before the district court established the following facts: (1) Three individuals were appointed by the sheriff as appraisers; (2) Each appraiser signed an oath stating that they were a resident of Tulsa County, not interested in the matter and promising to make a fair and impartial estimate of the real value of the property; (3) There is no evidence that any of the three individuals appointed by the sheriff was a professional appraiser or otherwise qualified by training or experience as an expert on the value of commercial property in the area, as they are identified by name only; (4) Each appraiser signed a return, under oath, stating that they had actually viewed the property "and estimated the real value thereof to be . . . $279,000;" (5) The basis for the appraisers' valuation is not disclosed nor do they disclose their method or the substance of their analysis; (6) At the sheriff's sale, Charles Sanders Homes was the only bidder; (7) Charles Sanders Homes bid $186,000, a statutorily sufficient amount on which the sheriff could sell the property and issue a deed to the purchaser; (8) Although all other interested parties and the public were properly notified of the sale, no one else, including the Cooks, was willing to pay more than $186,000 for the property. These facts not only constitute evidence, but also they provide evidence on the weight to be accorded the appraisers' estimated value. See also Sides v. John Cordes, Inc., 1999 OK 36, ¶ 16, 981 P.2d 301 (noting that the weight to be given expert testimony is for the trier of fact, who may reject the opinion of experts).

¶12 The $186,000 Charles Sanders Homes was willing to pay is clearly some evidence of the market value of the property. City of Tulsa v. Creekmore, 1934 OK 57, ¶ 0, 29 P.2d 101 (Syllabus 2) ("By fair market value is meant the amount of money which a purchaser willing but not obliged to buy the property would pay to an owner willing but not obliged to sell it . . . ."). Even though this was a judicial sale, it was not "a forced sale," as the Majority contends, or an auction where the sheriff was required to accept any offer. The sheriff could not sell the property unless he received an offer equal to or exceeding two-thirds of the "estimated value" of the property reported by the three appraisers. 12 O.S.2011 § 762. Further, if no one bid at least two-thirds of the appraisers' estimated value, the court was required to "set aside such appraisement and order a new one to be made . . . ." 12 O.S.2011 § 801. The fact that this was a judicial sale does not entirely negate the fact that only one purchaser was "willing" to purchase the property. The fact that this was a judicial sale, in my view, only goes to the weight the district court should accord the evidence of the purchase price in light of the principle announced in City of Tulsa v. Creekmore.

¶13 Further, this was a public, not a private sale. It is undisputed that proper notice of the sale was given to the Cooks and the public. The Cooks intentionally chose not to appear in order to avoid "unnecessary expense." That, they were free to do. But, in doing so, they failed to protect their perceived equity. And even though the district court ordered this sale, anyone could have appeared at the sheriff's sale and offered to purchase the property. The fact that no one did is evidence that the "market" for this property was limited and did not exceed the price paid by Charles Sanders Homes. That fact also suggests that, but for the two-thirds requirement in section 762, the true "market value" for which Charles Sanders Homes would have been able to purchase the property was less than $186,000.

¶14 The Majority relies on footnote 23 in Founders Bank and Trust Company v. Upsher, 1992 OK 35, 830 P.2d 1355, for the legislative intent behind section 686 based on the proposition that a sheriff's sale "seldom brings a property's fair market value." In this dicta, the Supreme Court opined that lenders often require "a guaranty for at least that portion of the indebtedness which would be lost by application of the anti-deficiency proceedings." Id. Upsher holds that the contract language of a guaranty determines whether a guarantor is entitled to credit for the sheriff's sale price or the fair market value of the property. Upsher involved the contractual liability of guarantors of a mortgage debt, not mortgagors like the Cooks. Upsher did not involve a deficiency hearing conducted pursuant to section 686 and did not construe "the anti-deficiency statute." Id. ¶ 15. Here, we deal with the amount of the deficiency owed by the mortgagors determined after the hearing conducted pursuant to section 686, not a lender's prudent business practice "to protect a loan's soundness." Id. n.23.

¶15 I find Riverside National Bank v. Manolakis, 1980 OK 72, 613 P.2d 438, more applicable to the legislative intent of section 686: "Anti-deficiency statutes much like our § 686 were adopted in many states to protect mortgagors from personal liability after a foreclosure sale has been effected at a time of greatly deflated land values in a depressed economy." Id. ¶ 7 (footnote omitted). There is no evidence in the record that this sale was conducted "at a time of greatly deflated land values in a depressed economy." Id.

¶16 Although originally derived from Kansas law, see Mehojah v. Moore, 87 OK CIV APP 43, 744 P.2d 222 (approved for publication by the Supreme Court), Oklahoma's anti-deficiency statute has a recognized affinity with New York law as well. Manolakis, 1980 OK 72, ¶ 7. See also Ingerton v. First Nat'l Bank and Trust Co., 291 F.2d 662, 665 (10th Cir. 1961). The generally recognized purpose of anti-deficiency statutes was explained in Tompkins County Trust Company v. Herrick, 13 N.Y.S.2d 825, 830 (1939):

The right to deficiency judgment remains intact. The changes in procedure, viewed in the light of the existing law, are not so oppressive as to cut down the value of the obligation. Mortgagees may still recover their debts in full. The effect of the statute is to prevent recovery of more.

Based on the evidence available at the deficiency hearing, Charles Sanders Homes recovered its debt in full, it did not recover more.

¶17 Based on the evidence at the hearing, the district court concluded that the market value of the property was equal to or less than the $186,000 sale price. The district court did not simply determine the "deficiency as the difference between the foreclosure price and the mortgage obligation." Neil Acquisition, L.L.C. v. Wingrod Inv. Corp., 1996 OK 125, n.12, 932 P.2d 1100. The district court conducted the hearing required by section 686, considered the available evidence, determined the market value of the property and the Cooks' deficiency by subtracting that value from the amount owed. Although the Cooks have failed to preserve the issue, it is important to note that a deficiency proceeding is equitable in nature and the district court's determination of the amount of a deficiency will not be set aside on appeal unless shown to be against the clear weight of the evidence. Reliable Life Ins. Co. of St. Louis v. Cook, 1979 OK 88, ¶ 11, 601 P.2d 455.

¶18 Like the Majority, I too agree with this Court's reasoning in Little Bear Resources, LLC v. Nemaha Services, Inc., 2011 OK CIV APP 18, 249 P.3d 957 (holding that judgment debtor in a general execution proceeding is entitled to set off the market value of real property sold at sheriff's sale if judgment creditor is the purchaser). However, I find that case distinguishable.

¶19 Little Bear did not involve a mortgage foreclosure proceeding or a deficiency hearing conducted pursuant to section 686. Nonetheless, the Little Bear Court applied the equitable principles it found mandated by that statute to foreclosure proceedings conducted pursuant to a general writ of execution. However, the judgment debtor appeared at the hearing to confirm the sheriff's sale and argued, without objection, that the estimated value was, in fact, the actual market value of the property. Here, Charles Sanders Homes challenges the appraisers' "drive by appraisal" and their estimate of the property's value derived without inspection of the interior of this commercial building. Most importantly, the judgment debtor in Little Bear appealed the order confirming the sheriff's sale preserving for appellate review the merits of the district court's finding regarding the market value of the property.

¶20 The Cooks did not appear at the sheriff's sale, and they did not appeal the order confirming the sheriff's sale. They did not even appeal the deficiency order and, therefore, have failed to preserve for appellate review any challenge to the district court's determination of the market value of this property. Yery v. Yery, 1981 OK 46, ¶ 14, 629 P.2d 357) ("[T]he correctness of an amount of a judgment under the evidence before the court is contestable as a direct appeal from the judgment, but that issue is not presented on the occasion of a motion to vacate the judgment, nor an appeal therefrom.").

¶21 In order to have their deficiency orders vacated, the Cooks are required to show that in denying their motions to vacate, the district court failed "to adhere to the established rules or mode of procedure in the orderly administration of justice." Knell v. Burnes, 1982 OK 35, ¶ 5, 645 P.2d 471. In my view, they have not done so. Nonetheless, the Majority not only reverses the order denying the motions to vacate but also vacates the previously entered deficiency judgments finding that the district court erred as to "the correctness of [the] amount of [the deficiency] judgment under the evidence." Yery v. Yery, 1981 OK 46, ¶ 14. And, the Majority does so in the absence of a "direct appeal" from the deficiency judgments. Id.

¶22 Oklahoma's statutory procedure clearly authorizes the sheriff to sell the property for two-thirds of the value reported by the three individuals appointed by the sheriff. 12 O.S.2011 § 762. Oklahoma statutes recognize that the value determined by the three individuals appointed by the sheriff is only an "estimate of the real value of the property." 12 O.S.2011 § 759(B). And, fatal to this appeal, the Cooks have not shown that the district court was required to find that the three appraisers' "estimate of the real value" was, in fact, the actual market value of the property.

¶23 The district court conducted the hearing required by section 686 in accordance with the established rules and procedure. Based on the evidence available at that hearing, the court determined the amount of the Cooks' deficiency "in accordance with the statutory formula . . . ." Neil Acquisition, L.L.C. v. Wingrod Inv. Corp., 1996 OK 125, ¶ 9, 932 P.2d 1100. No "irregularity" in the section 686 procedure has been or was attempted to be shown, much less the stronger showing required on appeal when the district court has refused to vacate a judgment. See Schweigert v. Schweigert, 2015 OK 20, ¶ 5, 348 P.3d 696.

¶24 Finally, it is unclear what is to be accomplished on remand. If the only "evidence of fair market value" at the section 686 hearing was the $279,000 appraisers' estimated value, then the district court should be instructed to use that number in determining the deficiency, a function this Court could perform. In re Reyna, 1976 OK 18, ¶ 22, 546 P.2d 622 (in cases of equitable cognizance, the appellate court may enter the judgment the trial court should have rendered). However, if a new hearing is to be conducted, additional evidence from all parties should be permitted. If Charles Sanders Homes proves that the market value of the property at the time of sale was less than the appraisers' estimated value, the amount of the Cooks' deficiency will be the same as previously determined by the district court.

¶25 I would affirm the orders appealed.

FOOTNOTES

[1] The Cooks also argue that the mathematical calculation used to fix the total amount of their deficiency was erroneous. That is the kind of procedural error within the purview of section 1031(3). See n.2. However, Charles Sanders Homes appears to concede this issue.

[2] The kinds of irregularities for which courts have previously vacated a judgment have involved prejudice to the rights of a party "because of a failure to adhere to the established rules or mode of procedure in the orderly administration of justice." Knell v. Burnes, 1982 OK 35, ¶ 5, 645 P.2d 471 (vacating judgment determined to be entered prematurely, before expiration of time to file brief). See also Nation v. Savely, 1927 OK 350, 260 P. 32 (vacating a judgment where the defendants had no actual notice of the trial date); Adachi v. Bickford, 1929 OK 86, 275 P. 306 (vacating default judgment rendered after case was placed on the nonjury docket in action at law in which defendant previously demanded a jury trial); National Valve & Mfg. Co. v. Wright, 1951 OK 381, 240 P.2d 766 (vacating judgment based on settlement reached by attorney without knowledge or consent of client).

[3] See Bank of Oklahoma v. Red Arrow Marina Sales & Serv., 2009 OK 77, n.8, 224 P.3d 685.

[4] Section 686 uses the terms "fair and reasonable market value" and "market value" interchangeably, and to refer to the same thing, that is, the property value the district court will use when establishing a mortgagor's deficiency. For convenience, I will use the shorter "market value" to describe the property value referenced in section 686.






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 1987 OK CIV APP 43, 744 P.2d 222, 58 OBJ 1622, Mehojah v. Moore
Discussed at Length
 2011 OK CIV APP 18, 249 P.3d 957, LITTLE BEAR RESOURCES, LLC v. NEMAHA SERVICES, INC.
Discussed at Length
 2016 OK CIV APP 45, 376 P.3d 945, CHARLES SANDERS HOMES, INC. v. COOK AND ASSOC. ENGINEERING, INC.
Discussed at Length
 1983 OK CIV APP 21, 663 P.2d 393, Eufaula Bank & Trust Co. v. Wheatley
Discussed at Length
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1986 OK 70, 727 P.2d 1361, 57 OBJ 2883, Salyer v. National Trailer Convoy, Inc.
Discussed
 1990 OK 66, 796 P.2d 276, 61 OBJ 1934, Panama Processes, S.A. v. Cities Service Co.
Discussed
 1992 OK 35, 830 P.2d 1355, 63 OBJ 1048, Founders Bank and Trust Co. v. Upsher
Discussed at Length
 1938 OK 270, 82 P.2d 976, 183 Okla. 332, FUNK v. PAYNE
Discussed
 1994 OK 120, 885 P.2d 1343, 65 OBJ 3684, McSorley v. Hertz Corp.
Discussed
 1917 OK 360, 167 P. 985, 66 Okla. 106, FIRST NATIONAL BANK OF TULSA et al. v. COLONIAL TRUST CO. et al.
Discussed
 1956 OK 221, 301 P.2d 212, STEMMONS, INC. v. UNIVERSAL C.I.T. CREDIT CORP.
Discussed
 1935 OK 385, 45 P.2d 1108, 172 Okla. 513, EDGE v. SECURITY BLDG. & LOAN ASS'N.
Discussed
 1962 OK 136, 372 P.2d 233, HASSELL v. TEXACO, INC.
Discussed
 1934 OK 57, 29 P.2d 101, 167 Okla. 298, CITY OF TULSA v. CREEKMORE
Discussed at Length
 1995 OK 62, 901 P.2d 800, 66 OBJ 2037, Oklahoma Assn. for Equitable Taxation v. City of Oklahoma City
Discussed
 1995 OK 69, 903 P.2d 293, 66 OBJ 2117, Stites v. Duit Const. Co., Inc.
Discussed
 1972 OK 90, 498 P.2d 1391, JOE WALSH ADVERTISING v. PHILLIPS TIRE & SUP.
Discussed
 2003 OK 10, 65 P.3d 591, CHRISTIAN v. GRAY
Discussed
 2003 OK 72, 77 P.3d 1042, TIBBETTS v. SIGHT 'n SOUND APPLIANCE CENTERS, INC.
Discussed at Length
 1929 OK 86, 275 P. 306, 135 Okla. 228, ADACHI v. BICKFORD
Discussed
 1996 OK 125, 932 P.2d 1100, 67 OBJ 3566, Neil Acquisition, L.L.C. v. Wingrod Investment Corp.
Discussed at Length
 2009 OK 77, 224 P.3d 685, BANK OF OKLAHOMA v. RED ARROW MARINA SALES & SERVICE
Discussed
 2011 OK 74, 261 P.3d 1143, LUMBER 2, INC. v. ILLINOIS TOOL WORKS, INC.
Discussed
 1976 OK 18, 546 P.2d 622, MATTER OF REYNA
Discussed
 2015 OK 20, 348 P.3d 696, SCHWEIGERT v. SCHWEIGERT
Discussed
 1980 OK 72, 613 P.2d 438, Riverside Nat. Bank v. Manolakis
Discussed at Length
 1977 OK 203, 571 P.2d 839, CUNNINGHAM v. CUNNINGHAM
Discussed
 1979 OK 88, 601 P.2d 455, RELIABLE LIFE INS. CO. OF ST. LOUIS v. COOK
Discussed
 1981 OK 46, 629 P.2d 357, Yery v. Yery
Discussed at Length
 1927 OK 350, 260 P. 32, 127 Okla. 117, NATION v. SAVELY
Discussed at Length
 1982 OK 35, 645 P.2d 471, Knell v. Burnes
Discussed at Length
 1982 OK 149, 655 P.2d 547, Mobbs v. City of Lehigh
Discussed
 1951 OK 381, 240 P.2d 766, 205 Okla. 571, NATIONAL VALVE & MFG. CO. v. WRIGHT
Discussed
 1998 OK 17, 967 P.2d 871, 69 OBJ 850, SHOEMAKER v. ESTATE OF FREEMAN
Discussed
 1999 OK 36, 981 P.2d 301, 70 OBJ 1445, Sides v. John Cordes, Inc.
Discussed
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 686, Mortgage Foreclosure - Deficiency Judgments
Discussed at Length
 12 O.S. 759, Filing and Indexing of Execution - Appraisement of Property
Discussed at Length
 12 O.S. 762, Property Not to Be Sold for Less Than Two-Thirds of Value Sufficient to Satisfy Judgment
Discussed at Length
 12 O.S. 764, Notice of Sale of Realty
Cited
 12 O.S. 801, Judgment Lien on Realty - Reappraisal
Cited
 12 O.S. 1031, District Court, Power to Vacate or Modify its Judgments, When
Discussed at Length
 12 O.S. 1038, Proceedings to Vacate or Modify a Judgment, Decree or Order
Discussed at Length


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA